BUSINESS CALENDAR

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and,
C & C DISTRIBUTORS, INC.,
Plaintiffs

v.

C.A. No. PB 07-

ANHEUSER-BUSCH, INC.,
InBev U.S.A., LLC,
InBev NV/SA and
McLAUGHLIN & MORAN, INC.,
Defendants

# VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND COMPENSATORY DAMAGES

## Preliminary Statement

This action is for declaratory relief, injunctive relief and compensatory damages pursuant to Rhode Island General Laws § 3-13-11 for defendants' failure to comply with the Rhode Island Beer Industry Fair Dealing Law and for defendants' breach of contract, intentional interference with contract, civil conspiracy/illegal concert of action, and intentional misrepresentation.

## Parties and Jurisdiction

1. Plaintiff, Copley Distributors, Inc. ("Copley"), is a Rhode Island business corporation with its principal place of business in West Greenwich, Rhode Island.

2. Plaintiff, Charles Fradin, Inc. ("Fradin"), is a Rhode Island business corporation with its principal place of business in West Greenwich, Rhode Island. Copley and Fradin are both wholly owned subsidiaries of a common parent. Copley and Fradin occupy the same facility in West Greenwich, Rhode Island.

3. Plaintiff, C & C Distributors, Inc. ("C&C"), is a Rhode Island business corporation with its principal place of business in West Greenwich, Rhode Island.

10. The Court has subject matter jurisdiction to render the requested declaratory relief pursuant to the Uniform Declaratory Judgments Act, Rhode Island General Laws §§ 9-30-1, *et seq.*

**Relevant Factual Background**

*The Beer Industry Fair Dealing Law*

11. In or about 1982, the Rhode Island General Assembly enacted the Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12, which is comprehensive legislation governing all aspects of the relationship in Rhode Island between a licensed wholesaler or distributor of malt beverages and a supplier of such products.

12. In general, the Act requires that a "supplier" as defined by the Act, enter into agreements with their distributors or wholesalers that contain terms conforming to the requirements of the Act. Under the Act, a "supplier" is defined to include any person or entity that ". . . enters into an agreement with any wholesaler in this state to distribute any or all of its brands of malt beverages, and any successor-in-interest to that entity with respect to the agreement." R.I. Gen. Laws § 3-13-1(5).

13. The Act prohibits a supplier from terminating such distribution relationships, except for "good cause" as defined by the Act and in accordance with the procedural requirements of the Act. Any agreement purporting to vary the Act is void and unenforceable to that extent only. R.I. Gen. Laws § 3-13-2(c).

14. In accordance with the express provisions of the Act, its purpose, *inter alia*, is to protect a wholesaler's "substantial initial and continuing investments of money, time, and effort in their distributorships and to stimulate greater investment of those resources in these small businesses by assuring their continuation on a fair, equitable and nondiscriminatory basis." R.I. Gen. Laws § 3-13-2(b)(2).

15. The General Assembly, in enacting the Act, directed that the Act "shall be liberally construed and applied to promote its remedial purposes and policies." R.I. Gen. Laws § 3-13-2(a).

*Copley and Fradin*

16. Copley and Fradin are licensed wholesalers of malt and other alcoholic beverages under the laws of the State of Rhode Island, and each is a "Wholesaler," as defined in the Act. R.I. Gen. Laws § 3-13-1(8). As wholesalers, Copley and Fradin possess wholesaler licenses to distribute malt beverages for resale to retailers in the State of Rhode Island. Copley and Fradin are hereinafter together referred to as "Copley."

17. Pursuant to express agreements with InBev USA or its various predecessors-in-interest (collectively, the "InBev USA Agreements"), Copley is the exclusive wholesaler and distributor in the State of Rhode Island for various malt beverage brands imported into the United States by InBev USA, including but not limited to Stella Artois, the Beck's Brands, the Belle-Vue Brands, Hoegaarden, the Leffe Brands, the Lowenbrau Brands, Staropramen Beer, Boddington's Pub Ale, and Tennent's Lager (collectively "Copley's Premium European Brands").

18. The foregoing distribution agreements are "Agreements" as defined by Rhode Island General Laws § 3-13-1(1).

19. Copley has been InBev USA's distributor of Copley's Premium European Brands in Rhode Island for several years, and has invested substantial sums of money, time, and effort to promote and market InBev USA's imported malt beverage products throughout Rhode Island.

20. Specifically, for the years 2002 through 2007, Copley has expended or will expend in excess of a half a million dollars for marketing Copley's Premium European Brands, which includes billboard and other transit advertising, print and other media advertising, point of

sale displays, tactical programming (including retailer incentives), brand investments, and promotional activities.

21. In addition, Copley, during the years 2003 through 2006, has expended tens of thousands of dollars for its on premises graphics and publishing department for purchasing, installing, maintaining, and servicing equipment used for promoting and marketing Copley's Premium European Brands.

22. In connection with its on premises graphics and publishing department, during the same period, Copley has also paid its employees in excess of $150,000 for the promotion and marketing of Copley's Premium European Brands.

23. Copley has also invested substantial time and effort in the training of its sales personnel in the marketing and sales of Copley's Premium European Brands.

24. In addition to such substantial investment in the marketing and promotion of Copley's Premium European Brands, Copley has made substantial purchases of Copley's Premium European Brands as follows: for 2004, approximately 98,000 cases; for 2005, approximately 110,000 cases, and for 2006, approximately 123,000 cases.

25. As a result of such substantial investments of time, money, and effort, Copley has made substantial sales of Copley's Premium European Brands as follows: for 2004, approximately $1,891,000; for 2005, approximately $2,142,000; and for 2006, approximately $2,435,000.

26. During the same years (2004 through 2006), Copley has realized hundreds of thousands of dollars each year in profits from its sales of Copley's Premium European Brands.

27. Copley believes, based on (i) well-documented consumer purchasing trends and (ii) Copley's own recent sales growth, that the segment of its annual sales volume comprised of

sales of Copley's Premium European Brands represents the most important future growth segment of its malt beverage sales.

<u>C&C</u>

28. C&C is a licensed wholesaler of malt and other alcoholic beverages under the laws of the State of Rhode Island and is a "Wholesaler," as that term is defined in the Act, Rhode Island General Laws § 3-13-1(8). As a wholesaler, C&C possesses a wholesaler license to distribute malt beverages for resale to retailers in the State of Rhode Island.

29. Pursuant to an express agreement originally entered into in or about 1970 with The Guinness Import Company, which was a predecessor-in-interest of InBev USA, C&C is the exclusive wholesaler and distributor in the State of Rhode Island for the Bass Ale Brand of beer imported into the United States by InBev USA.

30. The foregoing distribution agreement for the Bass Ale Brand is an "Agreement" under the terms of the Act.

31. C&C has been InBev USA's distributor of the Bass Ale Brand in Rhode Island for many years, and has invested substantial sums of money, time, and effort to promote and market the Bass Ale Brand and imported malt beverage products throughout Rhode Island. C&C' investment in the Bass Ale Brand has spanned thirty (30) years for five different "successor-in-interest" importers.

32. Specifically, C&C has expended or will expend substantial sums annually for marketing the Bass Ale Brands, which financial investment includes billboard and other transit advertising, print and other media advertising, point of sale displays, tactical programming (including retailer incentives), brand investments, and promotional activities.

33. For many years, C&C has aggressively marketed the Bass Ale Brand by directing substantial financial and organizational resources to secure Bass Ale Brand as the preeminent

Imported Draught Beer in Rhode Island. C&C has consistently directed its sales force to sell the Bass Ale Brand as one of the top three most valued brands at C&C, thereby foregoing profits from other potential beer brands C&C could have chosen to invest in. Indeed, C&C has leveraged the valuable Bass Ale Brand icon to benefit C&C's entire beer business over many years.

34. C&C has also invested substantial time and effort in the training of its sales personnel in the marketing and sales of the Bass Ale Brand.

35. In addition to such substantial investment in the marketing and promotion of the Bass Ale Brand, C&C has made substantial purchases of the Bass Ale Brand as follows: for 2004, approximately 97,000 cases; for 2005, approximately 93,000 cases, and for 2006, approximately 87,000 cases.

36. As a result of such substantial investments of time, money, and effort, C&C has made substantial sales of the Bass Ale Brand as follows: for 2004, approximately $2,100,000; for 2005, approximately $2,000,000; and for 2006, approximately $1,900,000.

37. During the same years (2004 through 2006), C&C has realized hundreds of thousands of dollars per year in profits from its sales of the Bass Ale Brand.

*InBev USA and InBev nv/sa*

38. InBev USA, prior to February 1, 2007 was the exclusive importer in the United States for a variety of premium beers brewed globally by breweries owned by InBev USA's parent company, InBev nv/sa, which parent company is the global leader in beer sales by dollar, and the second largest in the world in beer sales by volume.

39. InBev USA is a "Supplier," as that term is defined in the Act, Rhode Island General Laws § 3-13-1(5).

40. InBev USA has express agreements with Copley and C&C for the exclusive rights to distribute a variety of InBev USA's brands in the State of Rhode Island (all of which are brewed by InBev USA's parent, InBev nv/sa), including Stella Artois, the Bass Ale Brand, the Beck's Brands, the Belle-Vue Brands, Hoegaarden, the Leffe Brands, the Lowenbrau Brands, Staropramen Beer, Boddington's Pub Ale, and Tennent's Lager (collectively sometimes hereinafter referred to as "InBev USA's Premium European Brands").

41. Upon information, InBev USA and InBev nv/sa agreed, for no apparent consideration and effective midnight on January 31, 2007, that InBev USA's rights to import and distribute the Premium European Brands in the United States would expire and/or revert to InBev nv/sa.

*A-B*

42. A-B is the brewer of the flagship brand line, Budweiser, also owns multiple other brands of malt beverages, and serves as the sales and marketing agent for national distribution for other malt beverage companies.

43. A-B is the global leader in beer sales by volume, and the second largest in the world in beer sales by dollar.

44. A-B is a "Supplier," as that term is defined in the Act, Rhode Island General Laws § 3-13-1(5).

*Moran*

45. Moran is a licensed wholesaler of malt and other alcoholic beverages under the laws of the State of Rhode Island and is a "Wholesaler," as that term is defined in the Act, Rhode Island General Laws § 3-13-1(8). As a wholesaler, Moran possesses a wholesaler license to distribute malt beverages for resale to retailers in the State of Rhode Island.

46. Moran's brand portfolio in the State of Rhode Island is limited to A-B products, and as such, Moran is part of A-B's United States wholesale distribution network.

47. Upon information, Moran's sale of A-B products represents approximately fifty percent (50%) of the annual beer sales in the State of Rhode Island.

*Transfer of Distribution Rights from InBev USA to A-B and/or from InBev nv/sa to A-B*

48. Pursuant to an agreement publicly announced on or about November 30, 2006, A-B acquired the rights to import and distribute in the United States InBev nv/sa's Premium European Brands, effective February 1, 2007. Upon information and belief, said agreement is for a term of twenty (20) years or more.

49. Upon information, A-B acquired said import and distribution rights either directly from InBev nv/sa or its wholly owned subsidiary (and prior holder of said rights), InBev USA.

50. Upon information, A-B paid InBev USA and/or InBev nv/sa substantial consideration to acquire the distribution rights to InBev nv/sa's Premium European Brands.

51. In order to sell its import and distribution rights to A-B, InBev nv/sa and InBev USA agreed that effective January 31, 2007, InBev USA would no longer import the Premium European Brands into the United States.

52. The transaction among InBev nv/sa, InBev and A-B was intended to benefit both InBev and A-B by taking distribution rights away from InBev's United States distributors, such as Copley and C&C, and giving those valuable distribution rights to A-B's wholesalers in the United States.

53. In a November 30, 2006 Press Release, InBev's CEO stated that the agreement with A-B would allow InBev to secure ". . . access to Anheuser-Bush's world-class sales and distribution system . . . ."

54. In the same November 30, 2006 Press Release, August A. Busch IV, president and chief executive officer of the Anheuser-Busch Cos. Inc., made it clear that A-B's goal was to enable its wholesale distributors in the United States to sell the InBev premium brands, along with A-B's own premium brands. A-B's president stated that, "[t]hese well-known import brands complement our company's leading portfolio of American premium beers and enable our company to better compete."

55. While openly seeking to take distribution rights away from wholesalers such as Copley and C&C, the defendants were well aware that the laws in many states, including Rhode Island, protect wholesalers from the very conduct announced by defendants. Accordingly, in its November 30, 2006 Press Release, InBev and A-B announced that the InBev premium brands "will be available to Anheuser-Busch's U.S. wholesaler network *where possible*." (Emphasis added).

56. Under Rhode Island law, A-B's acquisition and transfer of the import and distribution rights from InBev USA constitutes a purchase and sale of a supplier's assets, and as such A-B is a "successor-in-interest" or "successor" to InBev USA under the Agreements. R.I. Gen. Laws § 3-13-1(5); § 3-13-8.

57. Under Rhode Island law, alternatively, when InBev nv/sa and InBev USA agreed that InBev USA would no longer import and distribute InBev nv/sa's Premium European Brands in the United States, InBev nv/sa became the "successor-in-interest" or "successor" to InBev USA under either section 3-13-1(5) or section 3-13-8, or both, of the Act. A-B, in turn, as the assignee of InBev nv/sa, then became the successor-in-interest or the successor to InBev nv/sa under the Agreements.

58. Upon information, A-B hired approximately 200 former InBev USA employees to assist with the distribution of the Premium European Brands by A-B.

59. Having purchased InBev USA's distribution rights, and as successor-in-interest or successor under InBev USA's distribution agreements with Copley and C&C, A-B is bound and obligated by the terms of the distribution agreements that Copley and C&C have with InBev USA.

60. Under Rhode Island law, the wholesale distribution rights of Copley and C&C cannot be terminated except for "good cause," which is defined by Rhode Island General Laws § 3-13-1(2) as "the failure . . . without reasonable excuse and justification, to comply substantially with a reasonable requirement . . . ."

61. Under Rhode Island law, a lawful termination of Copley and C&C's distribution rights requires ninety (90) days written notice, a specification of the "good cause" giving rise to the asserted right to terminate, and an opportunity to cure. R.I. Gen. Laws § 3-13-3(b).

62. As of January 3, 2007, InBev USA notified Copley and C&C that they would no longer be able to order the Copley Premium European Brands and the Bass Ale Brand from InBev USA after the close of business on January 12, 2007.

63. No "good cause" exists, nor did the InBev entities provide either Copley or C&C with ninety (90) days written notice of termination, a specification of the "good cause" giving rise to the asserted right to terminate, and an opportunity to cure.

64. By electronic mail dated on or after January 29, 2007, InBev USA has notified Copley and C&C (i) that InBev USA will "no longer be distributing European product as of [January 31, 2007] due to the transition of AB;" (ii) to "contact AB for all future ordering;" and (iii) that InBev USA will no longer take calls as of February 1, 2007 from wholesalers pertaining to orders.

65. Despite their obligation to honor the InBev USA Agreements with Copley and C&C, A-B, InBev USA, and InBev nv/sa have failed and refused to make the Premium European

Brands available to Copley and C&C to order on A-B's website ordering menu, and Copley and C&C have thus been unable, since February 1, 2007, to order the Copley Premium European Brands and the Bass Ale Brand.

66. A-B has informed C&C that it intends to assign the Bass Ale Brand distribution rights to defendant, Moran.

67. Upon information, A-B has assigned or intends to assign the distribution rights for the Copley Premium European Brands to Moran.

68. The transaction among the defendants is a transparent attempt to circumvent the clear provisions of Rhode Island law that are intended to protect wholesalers such as Copley and C&C from the very conduct perpetrated by defendants.

69. Upon information and belief, in negotiating for, and reaching an agreement upon the terms for the transfer and assignment to A-B of import and the distribution rights for the Premium European Brands, A-B, InBev USA, and InBev nv/sa, acting in concert, specifically attempted to structure the transaction in such a way as to circumvent and intentionally violate the Act by, *inter alia*, (i) having the assignment of the rights come from InBev nv/sa rather than InBev USA; (ii) relying upon a void provision of the distributorship agreement which purports to terminate Copley and C&C's distribution rights without complying with the Act; and (iii) failing to comply with the good cause, notice, and opportunity to cure termination requirements of the Act.

70. Upon further information and belief, InBev USA and InBev nv/sa assisted A-B in intentionally interfering with the valuable distribution contract rights of Copley and C&C in Rhode Island by failing to provide for the continued use of Copley and C&C as the exclusive distributors in accordance with the requirements of the Act.

*Copley's Relationship with A-B*

71. At all times relevant hereto, Fradin has been the exclusive distributor in the State of Rhode Island for the Rolling Rock Brands of beer, which until May 2006 was owned by InBev USA.

72. On information and belief, on or about May 2006, InBev USA sold the Rolling Rock Brands to A-B.

73. Rhode Island law requires a supplier such as A-B to provide each wholesaler of its brands with a written contract conforming to the provisions of Rhode Island law. R.I. Gen. Laws § 3-13-5(6).

74. After acquiring the Rolling Rock Brands, A-B tendered a written distribution agreement to Fradin (the "Rolling Rock Agreement") giving Fradin the continuing, exclusive right to distribute the Rolling Rock Brand in Rhode Island. Fradin signed the agreement on July 6, 2006 and returned it to A-B.

75. As of January 6, 2007, A-B had not returned the Rolling Rock Agreement to Fradin, executed by A-B.

76. On or about January 6, 2007, A-B advised Fradin that A-B's delay in signing the Rolling Rock Agreement related to the impending transfer of distribution rights from InBev USA to A-B, and that A-B would add the InBev USA Premium European Brands to the Rolling Rock Agreement and then return the executed agreement to Fradin.

77. A representative of InBev USA subsequently confirmed said representations to Fradin and/or Copley.

78. The former CEO of InBev USA has represented to both Copley and C&C in a conference call in or about December 2006 that InBev intended to honor the 2007 business plans

of its distributors, provided they were submitted as of a specified date, which date both Copley and C&C met.

79. Despite the foregoing representations by A-B, A-B has failed and refused to sign and return the Rolling Rock Agreement to Fradin/Copley, has failed to add the InBev USA Premium European Brands to said Agreement, and has failed and refused to allow Copley and C&C to order the Premium European Brands as of February 1, 2007.

## Claims for Relief

### COUNT I – Copley
### (Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)
### (Lack of Good Cause)

80. Copley hereby restates and incorporates herein the allegations contained in paragraphs 1 through 79 of this Verified Complaint.

81. The Act, in Rhode Island General Laws § 3-13-3, provides that "no supplier . . . may cancel, fail to renew, or otherwise terminate an agreement unless the party intending that action shows good cause for that action."

82. The Act defines "good cause" to mean the "failure by any party to an agreement, without reasonable excuse and justification, to comply substantially with a reasonable requirement imposed by either party." R.I. Gen. Laws § 3-13-1(2).

83. InBev nv/sa and/or A-B are the "successors-in-interest" to a supplier within the meaning of Rhode Island General Laws § 3-13-1(5), and are therefore obligated to all of the terms of the InBev USA Agreements.

84. InBev nv/sa and/or A-B are the successors to the InBev USA Agreements, and are obligated to all of the terms of the InBev USA Agreements pursuant to R.I. Gen. Laws § 3-13-8.

85. A-B, and/or InBev USA, and/or InBev nv/sa have violated the Act by purporting to terminate the InBev USA Agreements without good cause.

86. Copley has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements.

87. Copley has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Premium European Brands and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the InBev USA Agreements.

88. Copley has no adequate remedy at law.

WHEREFORE, Copley demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and requiring that the InBev USA Agreements shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements except in accordance with the provisions of the Act;

(c). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley for its actual damages, including but not limited to reasonable compensation for the value of Copley's business with respect to the Premium European Brands and Copley's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

COUNT II – C&C

(Violation of Rhode Island General Laws §§ 3-13-1, et seq. by
A-B, InBev USA, and InBev nv/sa)
(Lack of Good Cause)

89. C&C hereby restates and incorporates herein the allegations contained in paragraphs 1 through 88 of this Verified Complaint.

90. The Act, in Rhode Island General Laws § 3-13-4, provides that "no supplier . . . may cancel, fail to renew, or otherwise terminate an agreement unless the party intending that action shows good cause for that action."

91. The Act defines "good cause" to mean the "failure by any party to an agreement, without reasonable excuse and justification, to comply substantially with a reasonable requirement imposed by either party." R.I. Gen. Laws §3-13-1(2).

92. InBev nv/sa and/or A-B are the "successors-in-interest" to a supplier within the meaning of Rhode Island General Laws § 3-13-1(5), and are therefore obligated to all of the terms of the Bass Ale Agreement.

93. InBev nv/sa and/or A-B are the successors to the Bass Ale Agreement, and are obligated to all of the terms of the Bass Ale Agreement pursuant to R.I. Gen. Laws § 3-13-8.

94. A-B, and/or InBev USA, and/or InBev nv/sa have violated the Act by purporting to terminate the Bass Ale Agreement without good cause.

95. C&C has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements.

96. C&C has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Bass Ale Brand and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the Bass Ale Agreement.

97. C&C has no adequate remedy at law.

WHEREFORE, C&C demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement and requiring that the Bass Ale Agreement shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement except in accordance with the provisions of the Act;

(c). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate C&C for its actual damages, including but not limited to reasonable compensation for the value of C&C's business with respect to the Bass Ale Brand and C&C's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT III – Copley**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Improper Notice)**

98. Copley hereby restates and incorporates herein the allegations contained in paragraphs 1 through 97 of this Verified Complaint.

99. In accordance with the Act, R.I. Gen. Laws §§ 3-13-3 and 4, a supplier-wholesaler agreement may not be cancelled or terminated unless the terminating party has good cause to do so, and unless the terminating party has given the other party, by certified mail, at least ninety (90) days written notice prior to the purported termination date (i) stating the reasons for termination with particularity; (ii) stating the date when the purported termination shall take

effect; and (iii) stating the remedy or remedies available to the non-terminating party to cure the specified cause.

100. A-B, InBev USA, and InBev nv/sa have violated the foregoing provision by purporting to terminate the InBev USA Agreements without giving Copley the required notice and opportunity to cure.

101. Copley has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements.

102. Copley has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Premium European Brands and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the InBev USA Agreements.

103. Copley has no adequate remedy at law.

WHEREFORE, Copley demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and requiring that the InBev USA Agreements shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements except in accordance with the provisions of the Act;

(c). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley for its actual damages, including but not limited to reasonable compensation for the value of Copley's business with respect to the

Premium European Brands and Copley's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT IV – C&C**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Improper Notice)**

104. C&C hereby restates and incorporates herein the allegations contained in paragraphs 1 through 103 of this Verified Complaint.

105. In accordance with the Act, R.I. Gen. Laws §§ 3-13-3 and 4, a supplier-wholesaler agreement may not be cancelled or terminated unless the terminating party has good cause to do so, and unless the terminating party has given the other party, by certified mail, at least ninety (90) days written notice prior to the purported termination date (i) stating the reasons for termination with particularity; (ii) stating the date when the purported termination shall take effect; and (iii) stating the remedy or remedies available to the non-terminating party to cure the specified cause.

106. A-B, InBev USA, and InBev nv/sa have violated the foregoing provision by purporting to terminate the Bass Ale Agreement without giving C&C the required notice and opportunity to cure.

107. C&C has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement.

108. C&C has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Bass Ale Brand and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the Bass Ale Agreement.

109. C&C has no adequate remedy at law.

WHEREFORE, C&C demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement and requiring that the Bass Ale Agreement shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement except in accordance with the provisions of the Act;

(c). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate C&C for its actual damages, including but not limited to reasonable compensation for the value of C&C's business with respect to the Bass Ale Brand and C&C's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**<u>COUNT V – Copley</u>**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Exclusive Distribution)**

110. Copley hereby restates and incorporates herein the allegations contained in paragraphs 1 through 109 of this Verified Complaint.

111. The Act, in Rhode Island General Laws § 3-13-9, provides that

> "no supplier, who pursuant to an agreement with a wholesaler has designated a sales territory for which a wholesaler is primarily responsible or in which a wholesaler is required to concentrate its efforts shall enter into an agreement with any other wholesaler for the purpose of establishing an additional wholesaler for any of its brands, including any brands introduced after the effective date of the agreement, in all or part of the same territory."

112. Copley is the exclusive distributor of Copley's Premium European Brands for the entire State of Rhode Island.

113. A-B's appointment of Moran as a wholesaler of Copley's Premium European Brands constitutes a violation of section 3-13-9 of the Act.

114. Copley has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and appointing Moran as a distributor of Copley's Premium European Brands.

115. Copley has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Premium European Brands and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the InBev USA Agreements and appointment of Moran as a distributor of Copley's Premium European Brands. .

116. Copley has no adequate remedy at law.

WHEREFORE, Copley demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and appointing Moran as a distributor of Copley's Premium European Brands, and requiring that the InBev USA Agreements shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and appointing Moran as a distributor of Copley's Premium European Brands, except in accordance with the provisions of the Act;

(c). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley for its actual damages, including but not limited to reasonable compensation for the value of Copley's business with respect to the

Premium European Brands and Copley's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT VI – C&C**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Exclusive Distribution)**

117. C&C hereby restates and incorporates herein the allegations contained in paragraphs 1 through 116 of this Verified Complaint.

118. The Act, in Rhode Island General Laws § 3-13-9, provides that

> "no supplier, who pursuant to an agreement with a wholesaler has designated a sales territory for which a wholesaler is primarily responsible or in which a wholesaler is required to concentrate its efforts shall enter into an agreement with any other wholesaler for the purpose of establishing an additional wholesaler for any of its brands, including any brands introduced after the effective date of the agreement, in all or part of the same territory."

119. C&C is the exclusive distributor of the Bass Ale Brand for the entire State of Rhode Island.

120. A-B's appointment of Moran as a wholesaler of the Bass Ale Brand constitutes a violation of section 3-13-9 of the Act.

121. C&C has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement and appointing Moran as a distributor of the Bass Ale Brand.

122. C&C has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Bass Ale Brand and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's termination of the Bass Ale Agreement and appointment of Moran as a distributor of the Bass Ale Brand.

123. C&C has no adequate remedy at law.

WHEREFORE, C&C demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement and appointing Moran as a distributor of the Bass Ale Brand, and requiring that the Bass Ale Agreement shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the Bass Ale Agreement and appointing Moran as a distributor of the Bass Ale Brand, except in accordance with the provisions of the Act;

(c). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate C&C for its actual damages, including but not limited to reasonable compensation for the value of C&C's business with respect to the Bass Ale Brand and C&C's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT VII – Copley**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Failure to Provide Agreement)**

124. Copley hereby restates and incorporates herein the allegations contained in paragraphs 1 through 123 of this Verified Complaint.

125. The Act, in Rhode Island General Laws § 3-13-5(6) provides that no supplier shall "fail to provide to each wholesaler of its brands after May 22, 1982 a written contract which conforms to this chapter and embodies the supplier's agreement with its wholesaler, including the essential requirements, standards of performance, and terms imposed by the supplier."

126. A-B and/or InBev nv/sa became the supplier of Copley's Premium European Brands effective February 1, 2007.

127. Copley is now and was on February 1, 2007 the exclusive wholesaler of Copley's Premium European Brands in the State of Rhode Island.

128. A-B, InBev USA, and InBev nv/sa failed to provide Copley with a written contract which conforms to the terms of the Act in violation of section 3-13-5(6) of the Act.

129. Copley has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act.

130. Copley has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Premium European Brands and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's violation of section 3-13-5(6) of the Act.

131. Copley has no adequate remedy at law.

WHEREFORE, Copley demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act and requiring that the InBev USA Agreements shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act;

(c). Enter judgment for Copley and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley for its actual damages, including but not limited

to reasonable compensation for the value of Copley's business with respect to the Premium European Brands and Copley's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT VIII – C&C**
**Violation of Rhode Island General Laws §§ 3-13-1, et seq. by A-B, InBev USA, and InBev nv/sa)**
**(Failure to Provide Agreement)**

132. C&C hereby restates and incorporates herein the allegations contained in paragraphs 1 through 131 of this Verified Complaint.

133. The Act, in Rhode Island General Laws § 3-13-5(6) provides that no supplier shall "fail to provide to each wholesaler of its brands after May 22, 1982 a written contract which conforms to this chapter and embodies the supplier's agreement with its wholesaler, including the essential requirements, standards of performance, and terms imposed by the supplier."

134. A-B and/or InBev nv/sa became the supplier of the Bass Ale Brand effective February 1, 2007.

135. C&C is now and was on February 1, 2007 the exclusive wholesaler of the Bass Ale Brand in the State of Rhode Island.

136. A-B, InBev USA, and InBev nv/sa failed to provide C&C with a written contract which conforms to the terms of the Act in violation of section 3-13-5(6) of the Act.

137. C&C has suffered and will continue to suffer irreparable harm to its business, reputation, and goodwill in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act.

138. C&C has sustained and will continue to sustain damages, including but not limited to substantial lost profits with respect to the Bass Ale Brand and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's violation of section 3-13-5(6) of the Act.

139. C&C has no adequate remedy at law.

WHEREFORE, C&C demands that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act and requiring that the InBev USA Bass Ale Agreement shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from violating section 3-13-5(6) of the Act;

(c). Enter judgment for C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate C&C for its actual damages, including but not limited to reasonable compensation for the value of C&C's business with respect to the Bass Ale Brand and C&C's goodwill with respect thereto, plus interest and costs; and

(d). Grant such other and further relief as the Court determines to be fair and just.

**COUNT IX – COPLEY and C&C**
**(Injunctive Relief against A-B, InBev USA, and InBev nv/sa)**

140. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 139 of this Verified Complaint.

141. The Act, in Rhode Island General Laws § 3-13-11 (b), provides that "in any action under this section, the court may grant any equitable relief that the court determines is necessary or appropriate considering the purposes of this chapter, to remedy the effects of any failure to comply with this chapter or the effect of conduct prohibited under this chapter."

142. The Act, in Rhode Island General Laws § 3-13-7, provides that "[u]nless otherwise ordered by the superior court, all of the terms and conditions of an agreement between the parties shall remain in full force and effect for a period not to exceed one year during the

course of any arbitration or judicial proceedings brought to enforce any rights under an agreement of under this chapter."

143. The injunctive relief provided for in the Act is necessary to prevent irreparable harm to Copley and C&C.

WHEREFORE, Copley and C&C demand that the Court grant the following relief:

(a). Enter an immediate order pursuant to R.I. Gen. Laws § 3-13-7(c) precluding A-B, InBev USA, and InBev nv/sa from violating the Act and requiring that the InBev USA Agreements shall remain in full force and effect for a period of one year after the commencement of this action;

(b). Enter judgment for Copley and C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from violating the Act;

(c). Grant such other and further relief as the Court determines to be fair and just.

**COUNT X – COPLEY and C&C**
**(Declaratory Judgment against A-B, InBev USA, InBev nv/sa, and Moran)**

144. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 143 of this Verified Complaint.

145. Copley, C&C, and defendants A-B, InBev USA, InBev nv/sa, and Moran are "persons" within the meaning of section 9-30-13 of the Uniform Declaratory Judgments Act, Rhode Island General Laws §§ 9-30-1, *et seq.*

146. This Court has the authority to declare the legal rights, status, and relations of the parties pursuant to section 9-30-2 of the Uniform Declaratory Judgments Act.

147. This Court has authority to construe the contracts, agreements, arrangements, and statutes at issue in this case pursuant to section 9-30-2 of the Uniform Declaratory Judgment Act.

148. Copley, C&C, and defendants A-B, InBev USA, InBev nv/sa, and Moran are the only parties with claims or interests affected by the declaration of rights sought in this action.

149. Copley and C&C are entitled to declarations that InBev USA, InBev nv/sa, and A-B have violated the Act, *inter alia*, by improperly terminating the plaintiffs' distribution agreements for no good cause and without complying with the notice and opportunity to cure provisions of the Act; by failing to renew said agreements; by failing to comply with the exclusivity mandate of the Act; by failing to tender new distribution agreements with A-B effective February 1, 2007; and by appointing Moran as a distributor for the Premium European Brands.

150. To the extent that InBev nv/sa contends that the importation and distribution rights of InBev USA terminated and reverted to InBev nv/sa, Copley and C&C are entitled to a declaration that InBev nv/sa is a "successor" or "successor-in-interest" to the distribution rights of InBev USA, is a "supplier" as the term is defined in the Act, and is subject to the provisions of the Act.

151. Copley and C&C are entitled to a declaration that A-B, as a successor in interest to the importing arrangements with InBev USA and/or InBev nv/sa, is a "supplier" as the term is defined in the Act, and that A-B is subject to the provisions of the Act.

152. Copley and C&C are entitled to a declaration that A-B is a "supplier" subject to the provisions of the Act and, as such, A-B was obligated to provide Copley and C&C with written agreements consistent with the terms of the Act once A-B acquired the importation rights and distribution rights for the Premium European Brands on February 1, 2007.

153. Copley and C&C are entitled to a declaration that upon A-B's failure to provide Copley and C&C with written contracts upon acquiring the importation rights and distribution rights for the Premium European Brands on February 1, 2007, such agreements between Copley and A-B and C&C and A-B were implied as a matter of law, and that such agreements are consistent with, and contain the terms required by the Act.

154. Copley and C&C are entitled to a declaration that A-B, through its acquisition of the valuable importation rights and distribution rights for the Premium European Brands on February 1, 2007, is a purchaser of a supplier under the terms of section 3-13-8 of the Act and bound by the terms of Copley's and C&C's agreements with InBev USA.

155. Copley and C&C are entitled to a declaration that A-B, InBev USA and InBev nv/sa may not terminate the InBev USA agreements with Copley and C&C except in accordance with the good cause, notice, and opportunity to cure requirements of the Act.

156. Copley and C&C are entitled to a declaration that A-B may not transfer or assign to Moran the distribution rights that Copley and C&C have in the Premium European Brands under their agreements with InBev USA.

WHEREFORE, Copley and C&C demand that the Court enter judgment in their favor and against defendants declaring the rights, status, relations, obligations, and contracts of the parties as requested above in this Count X, and grant to Copley and C&C such other and further relief as the Court deems fair and just.

**COUNT XI – COPLEY and C&C**

**(Breach of Contract against A-B, InBev USA and InBev nv/sa)**

157. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 156 of this Verified Complaint.

158. As the successor or assign of InBev USA, A-B is obligated by all of the terms and conditions of the InBev USA Agreements and the Bass Ale Agreement.

159. As the apparent successor of InBev USA upon the termination of its distribution rights, InBev nv/sa is obligated by all of the terms and conditions of the InBev USA Agreements and the Bass Ale Agreement.

160. A-B, InBev USA, and InBev nv/sa have breached the InBev USA Agreements and the Bass Ale Agreement by attempting to terminate them without good cause, and without affording the required notice and opportunity to cure.

161. Copley and C&C will suffer irreparable harm to their business, reputation, and goodwill as set forth hereinabove in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and the Bass Ale Agreement.

162. Copley and C&C will sustain damages, including but not limited to the lost value of their business with respect to the Premium European Brands and the Bass Ale Brand, and loss of goodwill, as a result of A-B's, InBev USA's, and InBev nv/sa's attempted termination of the InBev USA Agreements and the Bass Ale Agreement.

163. Copley and C&C have no adequate remedy at law.

WHEREFORE, Copley and C&C demand that the Court grant the following relief:

(a). Enter judgment for Copley and C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and the Bass Ale Agreement except in accordance with the provisions of the Act;

(b). Enter judgment for Copley and C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley and C&C for their actual damages, including but not limited to reasonable compensation for the lost value of Copley's and C&C's business with respect to the Premium European Brands and the Bass Ale Brand, and Copley's and C&C's lost goodwill with respect thereto, plus interest and costs; and

(c). Grant such other and further relief as the Court determines to be fair and just.

COUNT XII – COPLEY and C&C
**(Intentional Interference with Contract by A-B and Moran)**

164. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 163 of this Verified Complaint.

165. Copley and C&C have enforceable distribution agreements with InBev USA for the exclusive rights to distribute in the State of Rhode Island Copley's Premium European Brands and the Bass Ale Brand, respectively.

166. Defendants A-B and Moran have, at all times material and relevant hereto, had knowledge of the distribution agreements between InBev USA and Copley and between InBev USA and C&C.

167. A-B has accepted a transfer of InBev USA's rights to distribute the Premium European Brands with an intent to ignore, interfere with, and breach the contractual distribution rights that Copley and C&C have.

168. Moran, upon information and belief, has accepted or intends to accept an appointment from A-B to distribute Copley's Premium European Brands and the Bass Ale Brand in Rhode Island which interferes with Copley and C&C's contractual rights to exclusively distribute said brands in Rhode Island.

169. Copley and C&C have suffered damages as a result of A-B and Moran interfering with their contractual rights under the InBev USA Agreements and the Bass Ale Agreement.

170. A-B's and Moran's acceptance of the InBev USA distribution rights in Rhode Island with knowledge of Copley C&C and defendant A-B's contractual relationship is intentional interference with a contractual relationship and Copley and C&C are entitled to recover damages therefor.

171. Copley and C&C have suffered irreparable harm as a direct and proximate result of A-B's and Moran's intentional interference with contract. Copley and C&C will suffer

irreparable harm if A-B and Moran are not enjoined from continued interference with Copley's and C&C's exclusive right to distribute Copley's Premium European Brands and the Bass Ale Brand in Rhode Island.

WHEREFORE, Copley and C&C demand that the Court grant the following relief:

(a). Enter judgment for Copley and C&C and against A-B and Moran temporarily and permanently enjoining A-B and Moran from interfering with the InBev USA Agreements and the Bass Ale Agreement;

(b). Enter judgment for Copley and C&C and against A-B and Moran in an amount sufficient to compensate Copley and C&C for their actual damages, including but not limited to reasonable compensation for the lost value of Copley's and C&C's business with respect to the Premium European Brands and the Bass Ale Brand, and Copley's and C&C's lost goodwill with respect thereto, plus interest and costs; and

(c). Grant such other and further relief as the Court determines to be fair and just.

**COUNT XIII – COPLEY and C&C**

**(Civil Conspiracy and Illegal Concert of Action against A-B, InBev USA, and InBev nv/sa)**

172. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 171 of this Verified Complaint.

173. Upon information and belief, in negotiating for, and reaching an agreement upon the terms for the transfer and assignment to A-B of import and the distribution rights for the Premium European Brands, A-B, InBev USA, and InBev nv/sa, acting in concert, specifically attempted to structure the transaction in such a way as to circumvent and intentionally violate the Act by, *inter alia*, (i) having the assignment of the rights come from InBev nv/sa rather than InBev USA; (ii) relying upon a void provision of the distributorship agreement which purports to terminate Copley and C&C's distribution rights without complying with the Act; and (iii) failing

to comply with the good cause, notice, and opportunity to cure termination requirements of the Act.

174. Upon further information and belief, InBev USA and InBev nv/sa assisted A-B in intentionally interfering with the valuable distribution contract rights of Copley and C&C in Rhode Island by failing to provide for the continued use of Copley and C&C as the exclusive distributors in accordance with the requirements of the Act.

175. As such, A-B and InBev USA have engaged in an unlawful enterprise, an illegal concert of action, and a conspiracy to violate the Act, interfere with Copley's and C&C's contracts, and deprive Copley and C&C of their valuable exclusive distribution rights.

176. As a result of such conspiracy and illegal concert of action by A-B, InBev USA, and InBev nv/sa, Copley and C&C have sustained and will continue to sustain substantial damages as set forth hereinabove.

177. Copley and C&C have suffered and will continue to suffer irreparable harm to their business, reputation, and goodwill as set forth hereinabove in the event that this Court does not enjoin A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and the Bass Ale Agreement.

178. Copley and C&C have no adequate remedy at law.

WHEREFORE, Copley and C&C demand that the Court grant the following relief:

(a). Enter judgment for Copley and C&C and against A-B, InBev USA, and InBev nv/sa permanently enjoining A-B, InBev USA, and InBev nv/sa from terminating the InBev USA Agreements and the Bass Ale Agreement except in accordance with the provisions of the Act;

(b). Enter judgment for Copley and C&C and against A-B, InBev USA, and InBev nv/sa in an amount sufficient to compensate Copley and C&C for their actual damages,

including but not limited to reasonable compensation for the lost value of Copley's and C&C's business with respect to the Premium European Brands and the Bass Ale Brand, and Copley's and C&C's lost goodwill with respect thereto, plus interest and costs; and

(c). Grant such other and further relief as the Court determines to be fair and just.

**COUNT IV – COPLEY and C&C**
**(Intentional Misrepresentation by A-B and InBev)**

179. Copley and C&C hereby restate and incorporate herein the allegations contained in paragraphs 1 through 178 of this Verified Complaint.

180. Authorized agents of A-B and InBev have represented to Copley that A-B intended to amend the distribution agreement previously delivered for the Rolling Rock Brands to include the InBev nv/sa Premium European Brands.

181. The former CEO of InBev USA has represented to both Copley and C&C in a conference call in or about December 2006 that InBev intended to honor the 2007 business plans of its distributors, provided they were submitted as of a specified date, which date both Copley and C&C met.

182. Copley and C&C relied on such representations to their detriment.

183. All such representations were false at the time A-B and InBev USA made them, and A-B and InBev knew such representations were false.

184. A-B and InBev intended to deceive Copley and C&C, so that they would not take any action prior to February 1, 2007 to protect their valuable distribution rights in the Copley's Premium European Brands and the Bass Ale Brand.

185. As a result of such intentional misrepresentations by A-B and InBev USA, Copley and C&C have sustained and will continue to sustain substantial damages as set forth hereinabove.

186. Copley and C&C have suffered and will continue to suffer irreparable harm to their business, reputation, and goodwill as set forth hereinabove in the event that this Court does not enjoin A-B and InBev USA from interfering with and terminating the InBev USA Agreements and the Bass Ale Agreement.

187. Copley and C&C have no adequate remedy at law.

WHEREFORE, Copley and C&C demand that the Court grant the following relief:

(a). Enter judgment for Copley and C&C and against A-B and InBev USA permanently enjoining A-B and InBev USA from terminating the InBev USA Agreements and the Bass Ale Agreement except in accordance with the provisions of the Act;

(b). Enter judgment for Copley and C&C and against A-B and InBev USA in an amount sufficient to compensate Copley and C&C for their actual damages, including but not limited to reasonable compensation for the lost value of Copley's and C&C's business with respect to the Premium European Brands and the Bass Ale Brand, and Copley's and C&C's lost goodwill with respect thereto, plus interest and costs; and

(c). Grant such other and further relief as the Court determines to be fair and just.

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman by [signature] 3940

Brian A. Goldman, RI Bar No.
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

Dated: February 6, 2007

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

## VERIFICATION BY PLAINTIFFS COPLEY AND FRADIN

Charles S. Fradin, being duly sworn, upon oath hereby states as follows:

1. I am the President of plaintiff Copley Distributors, Inc. and the President of plaintiff Charles Fradin, Inc., and I have knowledge of the matters asserted in the foregoing Verified Complaint.

2. I have reviewed the foregoing allegations of the Verified Complaint, and I affirm that such allegations are true based upon my knowledge and belief.

3. For such allegations as are set forth upon information and belief, I believe such allegations to be true.

CHARLES S. FRADIN

Sworn and subscribed to before me on this 6th day of February 2007.

Notary Public

My Commission Expires: July 9, 2009

## VERIFICATION BY PLAINTIFFS FRADIN

Paul Fradin, being duly sworn, upon oath hereby states as follows:

1. I am the President of plaintiff Charles Fradin, Inc. and I have knowledge of the matters asserted in the foregoing Verified Complaint.
2. I have reviewed the foregoing allegations of the Verified Complaint, and I affirm that such allegations are true based upon my knowledge and belief.
3. For such allegations as are set forth upon information and belief, I believe such allegations to be true.

Paul Fradin

PAUL FRADIN

Sworn and subscribed to before me on this 6th day of February 2007.

Notary Public Michael Squittiere

Notary Public

My Commission Expires: July 9, 2009

## VERIFICATION BY PLAINTIFF C&C

Kenneth J. Mancini, being duly sworn, upon oath hereby states as follows:

1. I am the President of plaintiff C&C Distributors, Inc., and I have knowledge of the matters asserted in the foregoing Verified Complaint.

2. I have reviewed the foregoing allegations of the Verified Complaint, and I affirm that such allegations are true based upon my knowledge and belief.

3. For such allegations as are set forth upon information and belief, I believe such allegations to be true.

KENNETH J. MANCINI

Sworn and subscribed to before me on this 6 day of February 2007.

Notary Public

My Commission Expires:

ELEANOR J. OLESEN
NOTARY PUBLIC OF RHODE ISLAND
MY COMMISSION EXPIRES 10/13/09