**BUSINESS CALENDAR**

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and,
C & C DISTRIBUTORS, INC.,
Plaintiffs

v.

ANHEUSER-BUSCH, INC.,
InBev U.S.A., LLC,
InBev NV/SA and
McLAUGHLIN & MORAN, INC.,
Defendants

C.A. No. PB 07-0703

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANHEUSER-BUSCH, INC.**

Pursuant to Rule 34 of the Rhode Island Rules of Civil Procedure, Plaintiffs, Copley Distributors, Inc., Charles Fradin, Inc. and C&C Distributors, Inc. ("Plaintiffs") hereby direct defendant, Anheuser-Busch, Inc. ("A-B") to produce the documents described below for inspection and copying at the offices of Shechtman Halperin Savage on an expedited basis, on or before Tuesday, February 27, 2007.

**Definitions**

1. Whenever used herein, the term "you," or any form or variation thereof, shall mean defendant, Anheuser-Busch, Inc., or any individual or entity acting on its behalf.

2. Whenever used herein, the terms "and" or "or" shall mean "and/or."

3. Whenever used herein, the term "InBev USA" shall mean defendant, InBev USA LLC, or any individual or entity acting on its behalf. The term "InBev USA" shall include Labatt USA LLC.

4. Whenever used herein, the term "InBev Europe" shall mean defendant, InBev nv/sa.

5. Whenever used herein, the term "Moran" shall mean defendant McLaughlin & Moran, Inc.

6. Whenever used herein, the term "document" shall mean any paper or other writing, any electronically stored data or collection of data, and any item of graphic material, however recorded or reproduced, including all drafts, copies or other preliminary materials that are different in any way from the executed or final document, regardless of whether designated "confidential," "privileged," or otherwise restricted, wherever located, whether an original or a copy, including, but not limited to, letters, correspondence, records, files, telephone records, e-mails, PDF files, Excel spreadsheets, data compilations, word processing documents, computer files, minutes, work papers, summaries, analyses, surveys, transcripts, statements, interviews, affidavits, drafts, notes, memoranda, indices, tabulations, graphs, reports, papers, inter-office communications, files, regulations, internal guidelines, publications, brochures, pamphlets, print-outs, recordings, tables, compilations, photographs, diaries, logs, calendars, drawings, data-reports, and all other written records or recordings of any conferences, meetings, visits, interviews or telephone conversations. Any copy containing thereon or having attached thereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

7. Whenever used herein, the term "A-B Transaction" shall mean the transaction, including any negotiations therefor, between A-B and InBev Europe,

effective on or about February 1, 2007, for the importation and/or distribution rights previously held by InBev USA.

8. Whenever used herein, the term "InBev International, Inc." shall mean InBev International, Inc., a corporation established in the State of Delaware, on or about June 27, 2006.

**Instructions**

A. In responding to each of the following requests, furnish all documents within your possession, custody or control or the possession, custody or control of your attorneys or other persons acting on your behalf. If you are acting in some representative capacity on behalf of others, or on behalf of a corporation or other division or unit thereof, furnish all information available to that entity.

B. For any requested documents as to which any claim of privilege is made or as to which any claim of protection from discovery is made, identify the privilege or Rule of Civil Procedure upon which you rely; identify the document in question by date, author(s), recipient(s), present custodian(s) and general subject matter(s); and set forth the facts upon which such claim of privilege or protection is based in sufficient detail to enable a judgment to be formed as to the basis and validity of the claim.

Unless otherwise stated, the time frame of January 1, 2004 to the present shall be the relevant time period for documents requested herein.

**Requests**

1. All documents reflecting and/or evidencing discussions between A-B and InBev Europe regarding the financial or business activities of InBev USA prior to the A-B Transaction.

2. All documents reflecting and/or evidencing discussions between A-B and InBev Europe regarding the financial or business activities of InBev USA after the effective date of the A-B Transaction.

3. All documents reflecting and/or evidencing communications from or to officers or other executives of InBev USA regarding the A-B Transaction.

4. All documents referencing InBev USA or any of its employees regarding the A-B Transaction.

5. All documents reflecting and/or evidencing communications from or to officers or other executives of InBev Europe referencing InBev USA's wholesale distributors.

6. All documents reflecting and/or evidencing the impact of the A-B Transaction on (a) InBev USA employees, including, without limitation any offers made to employees of InBev USA to work for A-B, and (b) the impact of the A-B Transaction on InBev USA's wholesale distributors.

7. All documents reflecting and/or evidencing efforts by A-B to recruit, interview or hire employees of InBev USA.

8. All documents reflecting and/or evidencing communications among InBev USA, InBev Europe and/or A-B regarding any of the plaintiffs.

9. All documents reflecting and/or evidencing communications among any of the defendants and any of the plaintiffs regarding distribution in Rhode Island.

10. All documents reflecting and/or evidencing communications among any of the defendants regarding distribution in Rhode Island.

11. All documents reflecting and/or evidencing the contractual relationship between A-B and any of the plaintiffs.

12. All documents reflecting and/or evidencing the contractual relationship between A-B and any of the defendants.

13. All documents reflecting and/or evidencing the relationship between A-B and InBev USA.

14. All documents reflecting and/or evidencing the relationship between A-B and InBev International, Inc..

15. All documents reflecting and/or evidencing the relationship between A-B and InBev Europe.

16. All documents reflecting and/or evidencing the role or responsibility of InBev International, Inc. for overseeing the A-B relationship.

17. A listing of the names and addresses of each person at InBev International, Inc. that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

18. A listing of the names and addresses of each person at InBev USA that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

19. A listing of the names and addresses of each person at InBev Europe that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

20. All documents A-B received and/or reviewed from InBev Europe prior to entering into the Import Agreement dated November 30, 2006, that in any way relate to InBev USA.

21. All documents A-B received and/or reviewed from InBev USA prior to entering into the Import Agreement dated November 30, 2006.

22. All documents A-B received and/or reviewed from InBev Europe from December 1, 2006 up to and including the present, that in any way relate to InBev USA and/or that in any way relate to distribution of InBev Europe brands in the United States.

23. All documents A-B received and/or reviewed from InBev USA from December 1, 2006 up to and including the present.

24. All documents A-B received and/or reviewed from InBev International, Inc. from December 1, 2006 up to and including the present, that in any way relate to InBev USA and/or that in any way relate to distribution of InBev Europe brands in the United States.

25. All documents reflecting and/or evidencing the corporate organizational chart, and any amendments thereto, of InBev International, Inc..

26. The articles of organization of InBev International, Inc..

27. All documents reflecting and/or evidencing direction, recommendations or suggestions by InBev Europe regarding the business, financial or corporate affairs of InBev USA.

28. All documents reflecting and/or evidencing the names of the members of the Board of Directors of InBev Europe and Inbev USA.

29. All documents regarding the Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

30. Financial statements of InBev USA for 2005 and 2006, including, without limitation, financial statements, summaries or other information of InBev USA provided to A-B by InBev Europe or InBev USA in connection with the A-B Transaction.

31. All documents reflecting and/or evidencing the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

32. All documents reflecting and/or evidencing the termination or expiration of the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

33. All contracts and/or agreements entered into between InBev Europe, InBev USA, and/or A-B with regard to the right to import and distribute InBev Europe products in the United States.

34. Copy of the "Import Agreement," dated on or about November 30, 2006 entered into between A-B and InBev Europe.

35. All documents concerning the termination of the rights of InBev USA to import InBev Europe brands.

36. All documents reflecting and/or evidencing communications with any person employed by InBev USA regarding the A-B Transaction.

37. Any and all budget documents for InBev Europe showing/reflecting and/or evidencing InBev USA's income or expenses at any time for the period from January 1, 2004 up to and including the present.

38. All documents reflecting and/or evidencing any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products.

39. All documents and/or correspondence between A-B and InBev Europe and/or InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

40. All contracts and/or agreements between InBev Europe and InBev USA regarding or evidencing the termination of the rights of InBev USA to import InBev Europe products into the United States.

41. All contracts and/or agreements between InBev Europe, InBev USA, and/or A-B that in any way relate to, reference, and/or evidence discussions regarding InBev USA no longer importing InBev Europe products in the United States.

42. All documents regarding and/or evidencing the A-B Transaction, including without limitation, the following:

a. All documents regarding InBev USA employees leaving InBev USA and being hired by A-B, including, without limitation, communications by InBev USA and/or A-B to such employees regarding their employment by A-B following the Transaction;

b. All documents regarding InBev USA employees leaving InBev USA and being hired by InBev Europe or another subsidiary of In Bev Europe;

c. All documents reflecting and/or evidencing any newly created positions or divisions of InBev Europe to deal with, oversee or work with A-B with respect to the InBev Europe brands; and the names of all persons who are

or will be assigned to or employed by each such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

d. All documents reflecting and/or evidencing the formation of and functions of "InBev International," a division of InBev Europe or one of its subsidiaries.

e. All documents reflecting and/or evidencing communications between InBev USA and Moran regarding distribution of InBev brands in Rhode Island.

f. All documents reflecting and/or evidencing communications between InBev USA and A-B regarding distribution of InBev brands in Rhode Island.

g. All documents regarding the decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

43. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and InBev Europe concerning the Transaction.

44. Any and all 2007 business plans of plaintiffs that were submitted to InBev USA and/or InBev Europe.

45. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and A-B concerning the Transaction.

46. All documents reflecting, evidencing, referring or relating to communications of any kind between A-B and InBev Europe concerning distribution in Rhode Island in connection with the A-B Transaction.

47. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and Moran concerning distribution of InBev Europe's brands in Rhode Island.

48. All documents executed by A-B in connection with the A-B Transaction.

49. All documents reflecting and/or evidencing any payment or consideration from InBev Europe or A-B to InBev USA resulting from the A-B Transaction.

50. All documents reflecting and/or evidencing any payment or consideration from A-B to InBev USA resulting from the A-B Transaction, including, without limitation, payment or consideration relating to InBev USA's former employees who are now employed by A-B as a result of the Transaction.

[rest of page intentionally left blank]

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February 2007, I have caused a true and accurate copy of the within Document Request, to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev USA, LLC)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com

Danielle M. Smith

18

**BUSINESS CALENDAR**

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

| | | |
|---|---|---|
| COPLEY DISTRIBUTORS, INC.,<br>CHARLES FRADIN, INC., and,<br>C & C DISTRIBUTORS, INC.,<br>Plaintiffs | : | |
| v. | : | C.A. No. PB 07-0703 |
| ANHEUSER-BUSCH, INC.,<br>InBev U.S.A., LLC,<br>InBev NV/SA and<br>McLAUGHLIN & MORAN, INC.,<br>Defendants | : | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT INBEV USA LLC**

Pursuant to Rule 34 of the Rhode Island Rules of Civil Procedure, Plaintiffs, Copley Distributors, Inc., Charles Fradin, Inc. and C&C Distributors, Inc. ("Plaintiffs") hereby direct defendant, InBev USA, LLC ("InBev USA") to produce the documents described below for inspection and copying at the offices of Shechtman Halperin Savage on an expedited basis, on or before Tuesday, February 27, 2007.

**Definitions**

1. Whenever used herein, the term "you," or any form or variation thereof, shall mean InBev USA LLC, or any individual or entity acting on its behalf. The term "InBev USA" shall include Labatt USA LLC.

2. Whenever used herein, the terms "and" or "or" shall mean "and/or."

3. Whenever used herein, the term "document" shall mean any paper or other writing, any electronically stored data or collection of data, and any item of graphic material, however recorded or reproduced, including all drafts, copies or other

preliminary materials that are different in any way from the executed or final document, regardless of whether designated "confidential," "privileged," or otherwise restricted, wherever located, whether an original or a copy, including, but not limited to, letters, correspondence, records, files, telephone records, e-mails, PDF files, Excel spreadsheets, data compilations, word processing documents, computer files, minutes, work papers, summaries, analyses, surveys, transcripts, statements, interviews, affidavits, drafts, notes, memoranda, indices, tabulations, graphs, reports, papers, inter-office communications, files, regulations, internal guidelines, publications, brochures, pamphlets, print-outs, recordings, tables, compilations, photographs, diaries, logs, calendars, drawings, data-reports, and all other written records or recordings of any conferences, meetings, visits, interviews or telephone conversations. Any copy containing thereon or having attached thereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

4. Whenever used herein, the term "InBev Europe" shall mean defendant, InBev nv/sa.

5. Whenever used herein, the term "Moran" shall mean defendant McLaughlin & Moran, Inc.

6. Whenever used herein, the term "A-B" shall mean defendant Anheuser-Busch, Inc.

7. Whenever used herein, the term "A-B Transaction" shall mean the transaction between A-B and InBev Europe for the importation and/or distribution rights previously held by InBev USA.

8. Whenever used herein, the term "InBev International, Inc." shall mean InBev International, Inc., a corporation established in the State of Delaware, on or about June 27, 2006.

## Instructions

A. In responding to each of the following requests, furnish all documents within your possession, custody or control or the possession, custody or control of your attorneys or other persons acting on your behalf. If you are acting in some representative capacity on behalf of others, or on behalf of a corporation or other division or unit thereof, furnish all information available to that entity.

B. For any requested documents as to which any claim of privilege is made or as to which any claim of protection from discovery is made, identify the privilege or Rule of Civil Procedure upon which you rely; identify the document in question by date, author(s), recipient(s), present custodian(s) and general subject matter(s); and set forth the facts upon which such claim of privilege or protection is based in sufficient detail to enable a judgment to be formed as to the basis and validity of the claim.

Unless otherwise stated, the time frame of January 1, 2004 to the present shall be the relevant time period for documents requested herein.

## Requests

1. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2007 up to and including the present.

2. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2004-December 31, 2004.

3. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2005-December 31, 2005.

4. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2006-December 31, 2006.

5. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2007 up to and including the present.

6. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2004-December 31, 2004.

7. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2005-December 31, 2005.

8. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2006-December 31, 2006.

9. The articles of organization of InBev USA and any amendments thereto.

10. The by-laws of InBev USA and any amendments thereto.

11. All documents reflecting a decision made by InBev Europe regarding the financial or business activities of InBev USA.

12. All documents reflecting the identity and job responsibilities of officers or other executives of InBev USA responsible for making business decisions.

13. All documents reflecting the identity and job responsibilities of officers or other executives of InBev Europe responsible for making business decisions regarding InBev USA.

14. All documents reflecting the identity of officers or other executives of InBev Europe responsible for making business or financial decisions regarding InBev USA.

15. All documents reflecting any and all corporate requirement(s), policy(s), directive(s) or other communication(s) by you or by InBev Europe to the effect that a decision, financial or otherwise, must be submitted for review and/or approval to InBev Europe.

16. All documents reflecting limits on the authority of InBev USA to act without the consent, approval or direction of InBev Europe.

17. All documents reflecting control by InBev Europe over the financial or business activities of InBev USA.

18. All documents reflecting the involvement of InBev Europe regarding employees of InBev USA, including, without limitation, (a) the impact on InBev USA employees of the A-B transaction; (b) the offer made to employees of InBev USA to work for A-B as a result of the Transaction (b) compensation including bonus compensation or severance payments to InBev USA employees as a result of the A-B Transaction; and (d) any decision regarding compensation to be paid to InBev USA employees from January 1, 2004 to the present.

19. All documents reflecting efforts by InBev Europe to recruit, advertise for or otherwise identify potential employees for InBev USA.

20. A copy of InBev USA's employee manual, and any amendments and/or changes thereto.

21. All documents prepared by InBev Europe reflecting the pricing to be charged by InBev USA to wholesalers such as plaintiffs.

22. All documents reflecting communications between InBev USA and InBev Europe regarding any of the plaintiffs.

23. All documents reflecting communications between InBev USA and InBev Europe regarding any of the defendants.

24. All documents reflecting communications between InBev USA and InBev Europe regarding InBev International, Inc..

25. All documents reflecting communications between any of the defendants and any of the plaintiffs regarding distribution of InBev Europe's brands in Rhode Island.

26. All documents reflecting communications between any of the defendants regarding distribution of InBev Europe's brands in Rhode Island.

27. All documents reflecting the contractual relationship between InBev USA and any of the plaintiffs.

28. All documents reflecting the contractual relationship between InBev USA and any of the defendants.

29. All documents reflecting the contractual relationship between InBev USA and Labatt USA.

30. All documents reflecting the name change from Labatt USA to InBev USA and back to Labatt USA.

31. All documents reflecting the relationship between InBev USA and Labatt USA.

32. All documents reflecting the relationship between InBev USA and InBev International, Inc..

33. All documents reflecting the relationship between InBev Europe and InBev International, Inc..

34. All documents reflecting the role or responsibility of InBev International, Inc. for overseeing the A-B relationship.

35. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev International, Inc..

36. The articles of organization on InBev International, Inc..

37. A listing of the names and addresses of each and every person employed at InBev International, Inc. for the time period January 1, 2007 up to and including the present.

38. All documents reflecting direction, recommendations or suggestions by InBev Europe regarding the business, financial or corporate affairs of InBev USA.

39. All documents reflecting the names of the members of the Board of Directors of InBev Europe, Inbev USA, and InBev International, Inc..

40. All documents reflecting InBev Europe's involvement in the decision announced in November or December, 2005 to make changes in the management at InBev USA.

41. All documents reflecting the names of the officers of InBev Europe, InBev USA, and InBev International, Inc., and any changes or amendments thereto, from January 1, 2004 up to and including the present.

42. All documents reflecting the identity of any and all owner(s) of the stock of InBev USA from its inception up to and including the present.

43. All documents reflecting any common directors and/or officers of InBev Europe and InBev USA, at any time from January 1, 2004 up to and including the present.

44. All documents reflecting any monies paid by InBevEurope to or for the benefit of InBev USA, including without limitation, payment of salaries, expenses and/or loans of InBev USA.

45. All documents reflecting any loans or other financial transactions pursuant to which InBev Europe paid or advanced monies to or on behalf of InBev USA or guaranteed debt of InBev USA.

46. All documents reflecting the logo used by InBev Europe to conduct business.

47. Copy of the corporate letterhead for InBev Europe.

48. All documents reflecting the logo used by InBev USA to conduct business.

49. Copy of the corporate letterhead of InBev USA.

50. All documents reflecting the logo used by InBev International, Inc. to conduct business.

51. Copy of the corporate letterhead of InBev International, Inc..

52. All documents reflecting the "global organizational structure" referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article

entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

53. All documents reflecting the unified "compensation and human development processes … around the world" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

54. All documents reflecting the unified "system of cost management worldwide" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

55. All documents reflecting the "intertwining of core managerial and day-to-day business functions" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

56. All documents reflecting the manner in which InBev USA and InBev Europe have core business functions that are "inseparable" and the manner in which InBev Europe and InBev USA have intermingled their assets "on a global level" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

57. All document reflecting that InBev USA's president and CEO reports to the InBev North American zone presidentas referred to by Simon Thorpe, former president

and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

58. All document reflecting that the InBev North American zone president reports directly to the InBev Europe CEO as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

59. All documents prepared by InBev USA regarding the need to obtain the consent or approval of Inbev Europe for any business or financial decision of InBev USA.

60. All documents reflecting persons or entities who have the right to appoint members of InBev USA's Board of Directors and how and when those directors are appointed.

61. All documents reflecting participation or involvement of any kind by InBev Europe in InBev USA's budgets, budget approvals and advertising and marketing strategy.

62. All documents regarding the Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

63. Financial statements of InBev USA for 2005 and 2006, including, without limitation, financial statements, summaries or other information prepared for inclusion in a consolidated financial statement or report of InBev Europe.

64. All documents reflecting the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

65. All documents reflecting the termination or expiration of the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

66. Any and all documents evidencing an agreement between Labatt USA and Beck's North America to form InBev USA.

67. All contracts and/or agreements entered into between InBev Europe, InBev USA, and/or A-B with regard to the right to import and distribute InBev Europe products in the United States.

68. Copy of the "Import Agreement", dated on or about November 30, 2006 entered into between A-B and InBev Europe.

69. A detailed listing, including names and addresses, for each person involved in making the decision to terminate InBev USA's United States imports of InBev Europe brands.

70. A detailed listing, including names and addresses, for each person involved in making the decision to enter to an Import Agreement with A-B for the United States imports of InBev Europe brands.

71. A listing of the names and addresses of each person at A-B that InBev International, Inc., InBev Europe, and/or InBev USA has spoken with and/or communicated with from January 1, 2006, up to and including the present.

72. All documents that were given to A-B by InBev Europe prior to entering into the Import Agreement dated November 30, 2006.

73. All documents that were given to A-B by InBev USA prior to entering into the Import Agreement dated November 30, 2006.

74. All documents that were given to A-B by InBev Europe from December 1, 2006 up to and including the present.

75. All documents that were given to A-B by InBev USA from December 1, 2006 up to and including the present.

76. All documents that were given to A-B by InBev International, Inc. from December 1, 2006 up to and including the present.

77. Any and all budget documents for InBev Europe showing/reflecting InBev USA's income or expenses for the time period January 1, 2004 up to and including the present.

78. All documents reflecting any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products.

79. All documents and/or correspondence between InBev Europe and InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

80. All contracts and/or agreements between InBev Europe and InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

81. All documents and/or correspondence between InBev Europe, InBev USA, and A-B that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

82. All contracts and/or agreements between InBev Europe, InBev USA, and A-B that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

83. All documents regarding the A-B Transaction, including without limitation, the following:

a. All documents regarding InBev USA employees leaving InBev USA and being hired by A-B, including, without limitation, communications by InBev USA to employees regarding their employment by A-B following the Transaction;

b. All documents regarding InBev USA employees leaving InBev USA and being hired by InBev Europe or another subsidiary of In Bev Europe;

c. All documents reflecting any newly created positions or divisions of InBev Europe that will deal with, oversee or work with A-B with respect to the InBev Europe brands; and the names of all persons who are or will be assigned to or employed by such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

d. All documents reflecting the formation of and functions of "InBev International, Inc.," a division of InBev Europe or one of its subsidiaries.

e. All documents reflecting communications between InBev USA and Moran regarding distribution of InBev brands in Rhode Island.

f. All documents reflecting communications between InBev USA and A-B regarding distribution of InBev brands in Rhode Island.

g. All documents regarding the decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

84. All documents reflecting, referring or relating to communications of any kind between InBev USA and InBev Europe concerning the Transaction.

85. Any and all 2007 business plans of Rhode Island distributors that were submitted to InBev USA and/or InBev Europe.

86. All documents reflecting, the identity and job responsibilities of any person employed by InBev USA who later became an employee of InBev Europe and the job responsibility of such person both at InBev USA and InBev Europe.

87. All documents reflecting, referring or relating to communications of any kind between InBev USA and A-B concerning the Transaction.

88. All documents reflecting, referring or relating to communications of any kind between A-B and InBev Europe concerning the Transaction.

89. All documents reflecting, referring, or relating to communications of any kind concerning the Transaction.

90. All documents reflecting referring or relating to communications of any kind between InBev USA and Moran concerning distribution of InBev Europe's brands in Rhode Island.

91. All agenda, minutes or notes (whether in draft of final form) from any and all meetings of the shareholders of InBev USA from January 1, 2004 to the present.

92. All agenda, minutes or notes (whether in draft of final form) from any and all meetings of the shareholders of InBev Europe from January 1, 2004 to the present mentioning InBev USA or any of its employees, officers or directors for any purpose whatsoever.

93. All documents reflecting any payment or consideration from InBev Europe to InBev USA resulting from the Transaction.

94. All documents reflecting any payment or consideration from A-B to InBev USA resulting from the Transaction, including, without limitation, payment or consideration relating to InBev USA's former employees who are now employed by A-B as a result of the Transaction.

95. Any and all Secretary of State filings for InBev USA and/or InBev Europe for the time period January 1, 2004 up to and including the present.

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this __h day of February 2007, I have caused a true and accurate copy of the within Memorandum in Opposition to Motion to Dismiss, to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev USA, LLC)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com

**BUSINESS CALENDAR**

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and,
C & C DISTRIBUTORS, INC.,
Plaintiffs

v.

C.A. No. PB 07-0703

ANHEUSER-BUSCH, INC.,
InBev U.S.A., LLC,
InBev NV/SA and
McLAUGHLIN & MORAN, INC.,
Defendants

**NOTICE OF DEPOSITION OF ANHEUSER-BUSCH, INC.**
**PURSUANT TO CIVIL RULE 30(b)(6)**

Please take notice that commencing at 10:00 AM on March 8, 2007, at the offices of Shechtman Halperin Savage, LLP, located at 1080 Main Street, Pawtucket, Rhode Island 02860, the Plaintiffs in this action, by their attorneys, will take the deposition, upon oral examination, of Anheuser-Busch, Inc., by and through its managing agent, officers, and/or employees to be designated by the Defendant Anheuser-Busch, Inc, pursuant to Rhode Island Superior Court Rules of Civil Procedure Rule 30(b)(6), before a Notary Public or other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

The subject matter upon which testimony is sought is outlined in Schedule A attached hereto and incorporated herein.

It is further requested that Anheuser-Busch, Inc furnish the Plaintiff with copies of the documents requested in the Plaintiffs' First Request for Production of Documents, attached hereto as Exhibit B, and incorporated herein, on or before February 27, 2007.

The attention of the Defendant is directed to Rhode Island Superior Court Rules of Civil Procedure Rule 30(b)(6), which states in pertinent part that : "...the organization so named shall serve and file, prior to the deposition, a written designation which identifies one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf and shall set forth, for each person designated, the matters on which the person will testify...The persons so designated shall testify as to matters known or reasonably available to the organization." Accordingly, Plaintiffs request that Anheuser-Busch, Inc. make such written designation.

Counsel for Defendants are invited to attend and cross-examine.

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

Dated: 2/16/07

## CERTIFICATE OF SERVICE

I hereby certify that on this 16[th] day of February 2007, I have caused a true and accurate copy of the within 30(b)(6) Deposition Notice to Anheuser-Busch, Inc., to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com

Danielle M. Smith [signature]

## SCHEDULE A

The following areas of inquiry or topics will be the subject matter of this Rule 30(b)(6) deposition, and plaintiffs request examination thereon. For each area, please designate one or more officers, directors, or managing agents with knowledge who will testify on behalf of Anheuser Busch, Inc. ("A-B").

1. Corporate organizational and other information concerning InBev USA, LLC ("InBev USA") and InBev nv/sa ("InBev Europe") for the period January 1, 2004 up to and including the present, including but not limited to any directives, recommendations, suggestions, control, or limitations imposed by InBev Europe regarding the business, financial or corporate affairs of InBev USA.

2. Communications between A-B and InBev Europe regarding (i) the financial or business activities of InBev USA prior to the transaction at issue in this case with InBev Europe effective on or about February 1, 2007 the ("A-B Transaction"), and (ii) the financial or business activities of InBev USA after the effective date of the A-B Transaction.

3. The circumstances surrounding and leading up to the A-B Transaction, including but not limited to (i) the arrangement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands in the United States; (ii) the termination or expiration of that arrangement; (iii) any contracts and/or agreements, including the "Import Agreement," dated on or about November 30, 2006, entered into between InBev Europe and A-B with regard to the right to import and distribute InBev Europe products in the United States; (iv) any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products; (v) communications between A-B and InBev Europe regarding the A-B Transaction; (vi) communications between A-B and

InBev USA regarding the A-B Transaction; and (vii) the efforts by A-B to recruit, interview or hire employees of InBev USA, including, without limitation, payment or consideration relating to InBev USA's former employees who are now employed by A-B as a result of the Transaction.

4. Communications between InBev USA or InBev Europe and A-B regarding any of the plaintiffs.

5. Communications among any of the defendants regarding distribution in Rhode Island.

6. The contractual relationship(s) between InBev USA and any of the plaintiffs, or between A-B and any of the plaintiffs.

7. The relationship between InBev USA or InBev Europe and InBev International, and the role or responsibility of InBev International for overseeing the A-B relationship with InBev Europe.

8. The Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

10. The decisions (i) that InBev USA employees would leave InBev USA and be hired by A-B, including, without limitation, communications by InBev USA to employees regarding their employment by A-B following the A-B Transaction; (ii) that InBev USA employees would leave InBev USA and be hired by InBev Europe or another subsidiary of In Bev Europe; and (iii) to create new positions or divisions of InBev Europe that will deal with, oversee or work with A-B with respect to the InBev Europe brands, including the identity of all persons who are or will be assigned to or employed by such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

11. Arrangements between A-B and Moran regarding distribution of InBev Europe brands in Rhode Island.

12. The decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

EXHIBIT
ALL-STATE LEGAL®
B

BUSINESS CALENDAR

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and,
C & C DISTRIBUTORS, INC.,
Plaintiffs

v.

C.A. No. PB 07-0703

ANHEUSER-BUSCH, INC.,
InBev U.S.A., LLC,
InBev NV/SA and
McLAUGHLIN & MORAN, INC.,
Defendants

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ANHEUSER-BUSCH, INC.

Pursuant to Rule 34 of the Rhode Island Rules of Civil Procedure, Plaintiffs, Copley Distributors, Inc., Charles Fradin, Inc. and C&C Distributors, Inc. ("Plaintiffs") hereby direct defendant, Anheuser-Busch, Inc. ("A-B") to produce the documents described below for inspection and copying at the offices of Shechtman Halperin Savage on an expedited basis, on or before Tuesday, February 27, 2007.

### Definitions

1. Whenever used herein, the term "you," or any form or variation thereof, shall mean defendant, Anheuser-Busch, Inc., or any individual or entity acting on its behalf.

2. Whenever used herein, the terms "and" or "or" shall mean "and/or."

3. Whenever used herein, the term "InBev USA" shall mean defendant, InBev USA LLC, or any individual or entity acting on its behalf. The term "InBev USA" shall include Labatt USA LLC.

4. Whenever used herein, the term "InBev Europe" shall mean defendant, InBev nv/sa.

5. Whenever used herein, the term "Moran" shall mean defendant McLaughlin & Moran, Inc.

6. Whenever used herein, the term "document" shall mean any paper or other writing, any electronically stored data or collection of data, and any item of graphic material, however recorded or reproduced, including all drafts, copies or other preliminary materials that are different in any way from the executed or final document, regardless of whether designated "confidential," "privileged," or otherwise restricted, wherever located, whether an original or a copy, including, but not limited to, letters, correspondence, records, files, telephone records, e-mails, PDF files, Excel spreadsheets, data compilations, word processing documents, computer files, minutes, work papers, summaries, analyses, surveys, transcripts, statements, interviews, affidavits, drafts, notes, memoranda, indices, tabulations, graphs, reports, papers, inter-office communications, files, regulations, internal guidelines, publications, brochures, pamphlets, print-outs, recordings, tables, compilations, photographs, diaries, logs, calendars, drawings, data-reports, and all other written records or recordings of any conferences, meetings, visits, interviews or telephone conversations. Any copy containing thereon or having attached thereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

7. Whenever used herein, the term "A-B Transaction" shall mean the transaction, including any negotiations therefor, between A-B and InBev Europe,

effective on or about February 1, 2007, for the importation and/or distribution rights previously held by InBev USA.

8. Whenever used herein, the term "InBev International, Inc." shall mean InBev International, Inc., a corporation established in the State of Delaware, on or about June 27, 2006.

## Instructions

A. In responding to each of the following requests, furnish all documents within your possession, custody or control or the possession, custody or control of your attorneys or other persons acting on your behalf. If you are acting in some representative capacity on behalf of others, or on behalf of a corporation or other division or unit thereof, furnish all information available to that entity.

B. For any requested documents as to which any claim of privilege is made or as to which any claim of protection from discovery is made, identify the privilege or Rule of Civil Procedure upon which you rely; identify the document in question by date, author(s), recipient(s), present custodian(s) and general subject matter(s); and set forth the facts upon which such claim of privilege or protection is based in sufficient detail to enable a judgment to be formed as to the basis and validity of the claim.

Unless otherwise stated, the time frame of January 1, 2004 to the present shall be the relevant time period for documents requested herein.

## Requests

1. All documents reflecting and/or evidencing discussions between A-B and InBev Europe regarding the financial or business activities of InBev USA prior to the A-B Transaction.

2. All documents reflecting and/or evidencing discussions between A-B and InBev Europe regarding the financial or business activities of InBev USA after the effective date of the A-B Transaction.

3. All documents reflecting and/or evidencing communications from or to officers or other executives of InBev USA regarding the A-B Transaction.

4. All documents referencing InBev USA or any of its employees regarding the A-B Transaction.

5. All documents reflecting and/or evidencing communications from or to officers or other executives of InBev Europe referencing InBev USA's wholesale distributors.

6. All documents reflecting and/or evidencing the impact of the A-B Transaction on (a) InBev USA employees, including, without limitation any offers made to employees of InBev USA to work for A-B, and (b) the impact of the A-B Transaction on InBev USA's wholesale distributors.

7. All documents reflecting and/or evidencing efforts by A-B to recruit, interview or hire employees of InBev USA.

8. All documents reflecting and/or evidencing communications among InBev USA, InBev Europe and/or A-B regarding any of the plaintiffs.

9. All documents reflecting and/or evidencing communications among any of the defendants and any of the plaintiffs regarding distribution in Rhode Island.

10. All documents reflecting and/or evidencing communications among any of the defendants regarding distribution in Rhode Island.

11. All documents reflecting and/or evidencing the contractual relationship between A-B and any of the plaintiffs.

12. All documents reflecting and/or evidencing the contractual relationship between A-B and any of the defendants.

13. All documents reflecting and/or evidencing the relationship between A-B and InBev USA.

14. All documents reflecting and/or evidencing the relationship between A-B and InBev International, Inc..

15. All documents reflecting and/or evidencing the relationship between A-B and InBev Europe.

16. All documents reflecting and/or evidencing the role or responsibility of InBev International, Inc. for overseeing the A-B relationship.

17. A listing of the names and addresses of each person at InBev International, Inc. that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

18. A listing of the names and addresses of each person at InBev USA that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

19. A listing of the names and addresses of each person at InBev Europe that A-B has spoken with and/or communicated with from January 1, 2007, up to and including the present.

20. All documents A-B received and/or reviewed from InBev Europe prior to entering into the Import Agreement dated November 30, 2006, that in any way relate to InBev USA.

21. All documents A-B received and/or reviewed from InBev USA prior to entering into the Import Agreement dated November 30, 2006.

22. All documents A-B received and/or reviewed from InBev Europe from December 1, 2006 up to and including the present, that in any way relate to InBev USA and/or that in any way relate to distribution of InBev Europe brands in the United States.

23. All documents A-B received and/or reviewed from InBev USA from December 1, 2006 up to and including the present.

24. All documents A-B received and/or reviewed from InBev International, Inc. from December 1, 2006 up to and including the present, that in any way relate to InBev USA and/or that in any way relate to distribution of InBev Europe brands in the United States.

25. All documents reflecting and/or evidencing the corporate organizational chart, and any amendments thereto, of InBev International, Inc..

26. The articles of organization of InBev International, Inc..

27. All documents reflecting and/or evidencing direction, recommendations or suggestions by InBev Europe regarding the business, financial or corporate affairs of InBev USA.

28. All documents reflecting and/or evidencing the names of the members of the Board of Directors of InBev Europe and Inbev USA.

29. All documents regarding the Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

30. Financial statements of InBev USA for 2005 and 2006, including, without limitation, financial statements, summaries or other information of InBev USA provided to A-B by InBev Europe or InBev USA in connection with the A-B Transaction.

31. All documents reflecting and/or evidencing the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

32. All documents reflecting and/or evidencing the termination or expiration of the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

33. All contracts and/or agreements entered into between InBev Europe, InBev USA, and/or A-B with regard to the right to import and distribute InBev Europe products in the United States.

34. Copy of the "Import Agreement," dated on or about November 30, 2006 entered into between A-B and InBev Europe.

35. All documents concerning the termination of the rights of InBev USA to import InBev Europe brands.

36. All documents reflecting and/or evidencing communications with any person employed by InBev USA regarding the A-B Transaction.

37. Any and all budget documents for InBev Europe showing/reflecting and/or evidencing InBev USA's income or expenses at any time for the period from January 1, 2004 up to and including the present.

38. All documents reflecting and/or evidencing any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products.

39. All documents and/or correspondence between A-B and InBev Europe and/or InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

40. All contracts and/or agreements between InBev Europe and InBev USA regarding or evidencing the termination of the rights of InBev USA to import InBev Europe products into the United States.

41. All contracts and/or agreements between InBev Europe, InBev USA, and/or A-B that in any way relate to, reference, and/or evidence discussions regarding InBev USA no longer importing InBev Europe products in the United States.

42. All documents regarding and/or evidencing the A-B Transaction, including without limitation, the following:

a. All documents regarding InBev USA employees leaving InBev USA and being hired by A-B, including, without limitation, communications by InBev USA and/or A-B to such employees regarding their employment by A-B following the Transaction;

b. All documents regarding InBev USA employees leaving InBev USA and being hired by InBev Europe or another subsidiary of In-Bev Europe;

c. All documents reflecting and/or evidencing any newly created positions or divisions of InBev Europe to deal with, oversee or work with A-B with respect to the InBev Europe brands; and the names of all persons who are

or will be assigned to or employed by each such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

d. All documents reflecting and/or evidencing the formation of and functions of "InBev International," a division of InBev Europe or one of its subsidiaries.

e. All documents reflecting and/or evidencing communications between InBev USA and Moran regarding distribution of InBev brands in Rhode Island.

f. All documents reflecting and/or evidencing communications between InBev USA and A-B regarding distribution of InBev brands in Rhode Island.

g. All documents regarding the decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

43. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and InBev Europe concerning the Transaction.

44. Any and all 2007 business plans of plaintiffs that were submitted to InBev USA and/or InBev Europe.

45. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and A-B concerning the Transaction.

46. All documents reflecting, evidencing, referring or relating to communications of any kind between A-B and InBev Europe concerning distribution in Rhode Island in connection with the A-B Transaction.

47. All documents reflecting, evidencing, referring or relating to communications of any kind between InBev USA and Moran concerning distribution of InBev Europe's brands in Rhode Island.

48. All documents executed by A-B in connection with the A-B Transaction.

49. All documents reflecting and/or evidencing any payment or consideration from InBev Europe or A-B to InBev USA resulting from the A-B Transaction.

50. All documents reflecting and/or evidencing any payment or consideration from A-B to InBev USA resulting from the A-B Transaction, including, without limitation, payment or consideration relating to InBev USA's former employees who are now employed by A-B as a result of the Transaction.

[rest of page intentionally left blank]

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February 2007, I have caused a true and accurate copy of the within Document Request, to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev USA, LLC)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com

**BUSINESS CALENDAR**

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

| | | |
|---|---|---|
| COPLEY DISTRIBUTORS, INC.,<br>CHARLES FRADIN, INC., and,<br>C & C DISTRIBUTORS, INC.,<br>Plaintiffs<br><br>v.<br><br>ANHEUSER-BUSCH, INC.,<br>InBev U.S.A., LLC,<br>InBev NV/SA and<br>McLAUGHLIN & MORAN, INC.,<br>Defendants | : | C.A. No. PB 07-0703 |

**NOTICE OF DEPOSITION OF INBEV USA, LLC**
**<u>PURSUANT TO CIVIL RULE 30(b)(6)</u>**

Please take notice that commencing at 10:00 AM on March 6, 2007, at the offices of Shechtman Halperin Savage, LLP, located at 1080 Main Street, Pawtucket, Rhode Island 02860, the Plaintiffs in this action, by their attorneys, will take the deposition, upon oral examination, of InBev USA, LLC, by and through its managing agent, officers, and/or employees to be designated by the Defendant InBev USA, LLC, pursuant to Rhode Island Superior Court Rules of Civil Procedure Rule 30(b)(6), before a Notary Public or other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

The subject matter upon which testimony is sought is outlined in Schedule A attached hereto and incorporated herein.

It is further requested that InBev USA, LLC furnish the Plaintiff with copies of the documents requested in the Plaintiffs' First Request for Production of Documents, attached hereto as Exhibit B, and incorporated herein, on or before February 27, 2007.

The attention of the Defendant is directed to Rhode Island Superior Court Rules of Civil Procedure Rule 30(b)(6), which states in pertinent part that : "...the organization so named shall serve and file, prior to the deposition, a written designation which identifies one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf and shall set forth, for each person designated, the matters on which the person will testify...The persons so designated shall testify as to matters known or reasonably available to the organization." Accordingly, Plaintiffs request that InBev USA, LLC make such written designation.

Counsel for Defendants are invited to attend and cross-examine.

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

Dated: February 16, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of February 2007, I have caused a true and accurate copy of the within 30(b)(6) Deposition Notice to InBev USA, LLC, to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com

Danielle M. Smith

## SCHEDULE A

The following areas of inquiry or topics will be the subject matter of this Rule 30(b)(6) deposition, and plaintiffs request examination thereon. For each area, please designate one or more officers, directors, or managing agents with knowledge who will testify on behalf of InBev USA, LLC ("InBev USA").

1. Information, generally, concerning InBev USA and InBev nv/sa ("InBev Europe") for the period January 1, 2004 to the present, including but not limited to (i) the corporate or company organization of InBev USA and InBev Europe, including identity of officers and directors; (ii) corporate organizational documents for such entities; (iii) financial and business decision-making for such entities, including the identity of persons responsible for making such decisions; (vi) meetings of the shareholders and directors of each company; (v) corporate requirement(s), policy(s), directive(s) of InBev Europe pertaining to decisions of InBev USA; (vi) limits on the authority of InBev USA to act without the consent, approval or direction of InBev Europe with regard to material business and financial decisions; (vii) the control by InBev Europe over the financial or business activities (including budgets) of InBev USA; (viii) ownership of InBev USA stock; (ix) the involvement of InBev Europe regarding employees of InBev USA; (x) InBev USA's corporate policies and procedures; and (xi) the role or input of InBev Europe regarding the pricing to be charged by InBev USA to wholesalers such as plaintiffs.

2. Communications between InBev USA and InBev Europe regarding any of the plaintiffs and regarding issues in this case, including but not limited to (i) distribution in Rhode Island; (ii) the contractual relationship(s) between InBev USA and any of the plaintiffs or between InBev USA and any of the defendants; (iii) the decisions to award the distribution rights

to Anheuser-Busch, Inc. ("A-B") and to terminate the distribution rights of InBev USA; and (vi) InBev Europe's involvement in the decision announced in November or December, 2005 to make changes in the management at InBev USA.

3. Monies paid by InBev Europe to or for the benefit of InBev USA, including without limitation, payment of salaries, expenses and/or loans of InBev USA; and loans or other financial transactions pursuant to which InBev Europe paid or advanced monies to or on behalf of InBev USA or guaranteed debt of InBev USA.

4. Information about InBev International, including but not limited to corporate organizational information; the relationships between InBev USA and InBev International and between InBev Europe and InBev International; and the role or responsibility of InBev International for overseeing the A-B relationship.

5. The "global organizational structure;" the unified "compensation and human development processes ... around the world;" the unified "system of cost management worldwide;" the "intertwining of core managerial and day-to-day business functions;" the manner in which InBev USA and InBev Europe have core business functions that are "inseparable" and the manner in which InBev Europe and InBev USA have intermingled their assets "on a global level;" whether InBev USA's president and CEO reports to the InBev North American zone president; and whether the InBev North American zone president reports directly to the InBev Europe CEO as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

6. The Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

7. The financial statements of InBev USA for 2005 and 2006, including, without limitation, financial statements, summaries or other information prepared for inclusion in a consolidated financial statement or report of InBev Europe.

8. The arrangement, and the termination or expiration of the arrangement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

9. The circumstances, including any agreements pertaining thereto, surrounding the decision of Labatts USA and Beck's North America to form InBev USA.

10. Any contracts, agreements, and/or arrangements entered into between InBev Europe, InBev USA, and/or A-B with regard to the right to import and distribute InBev Europe products in the United States, including but not limited to the "Import Agreement," dated on or about November 30, 2006 entered into between A-B and InBev Europe.

11. Any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products.

12. Issues surrounding the award of distribution rights to A-B, including without limitation, the following:

a. The decision that InBev USA employees would leave InBev USA and be hired by A-B, including, without limitation, communications by InBev USA to employees regarding their employment by A-B following the Transaction;

b. The decision that InBev USA employees would leave InBev USA and be hired by InBev Europe or another subsidiary of In Bev Europe;

c. The newly created positions or divisions of InBev Europe that will deal with, oversee or work with A-B with respect to the InBev Europe brands; and the

identity of all persons who are or will be assigned to or employed by such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

d. The formation of and functions of "InBev International," a division of InBev Europe or one of its subsidiaries.

e. Communications between InBev USA and Moran regarding distribution of InBev brands in Rhode Island.

f. Communications between InBev USA and A-B regarding distribution of InBev brands in Rhode Island.

g. The decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

13. The identity and job responsibilities of any person employed by InBev USA who later became an employee of InBev Europe and the job responsibility of such person at InBev Europe.

EXHIBIT B

ALL-STATE LEGAL®

BUSINESS CALENDAR

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and,
C & C DISTRIBUTORS, INC.,
Plaintiffs

v.

C.A. No. PB 07-0703

ANHEUSER-BUSCH, INC.,
InBev U.S.A., LLC,
InBev NV/SA and
McLAUGHLIN & MORAN, INC.,
Defendants

# PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT INBEV USA LLC

Pursuant to Rule 34 of the Rhode Island Rules of Civil Procedure, Plaintiffs, Copley Distributors, Inc., Charles Fradin, Inc. and C&C Distributors, Inc. ("Plaintiffs") hereby direct defendant, InBev USA, LLC ("InBev USA") to produce the documents described below for inspection and copying at the offices of Shechtman Halperin Savage on an expedited basis, on or before Tuesday, February 27, 2007.

## Definitions

1. Whenever used herein, the term "you," or any form.or variation thereof, shall mean InBev USA LLC, or any individual or entity acting on its behalf. The term "InBev USA" shall include Labatt USA LLC.

2. Whenever used herein, the terms "and" or "or" shall mean "and/or."

3. Whenever used herein, the term "document" shall mean any paper or other writing, any electronically stored data or collection of data, and any item of graphic material, however recorded or reproduced, including all drafts, copies or other

preliminary materials that are different in any way from the executed or final document, regardless of whether designated "confidential," "privileged," or otherwise restricted, wherever located, whether an original or a copy, including, but not limited to, letters, correspondence, records, files, telephone records, e-mails, PDF files, Excel spreadsheets, data compilations, word processing documents, computer files, minutes, work papers, summaries, analyses, surveys, transcripts, statements, interviews, affidavits, drafts, notes, memoranda, indices, tabulations, graphs, reports, papers, inter-office communications, files, regulations, internal guidelines, publications, brochures, pamphlets, print-outs, recordings, tables, compilations, photographs, diaries, logs, calendars, drawings, data-reports, and all other written records or recordings of any conferences, meetings, visits, interviews or telephone conversations. Any copy containing thereon or having attached thereto any alterations, notes, comments or other material shall be deemed a separate document from the original or any other copy not containing such material within the foregoing definition.

4. Whenever used herein, the term "InBev Europe" shall mean defendant, InBev nv/sa.

5. Whenever used herein, the term "Moran" shall mean defendant McLaughlin & Moran, Inc.

6. Whenever used herein, the term "A-B" shall mean defendant Anheuser-Busch, Inc.

7. Whenever used herein, the term "A-B Transaction" shall mean the transaction between A-B and InBev Europe for the importation and/or distribution rights previously held by InBev USA.

8. Whenever used herein, the term "InBev International, Inc." shall mean InBev International, Inc., a corporation established in the State of Delaware, on or about June 27, 2006.

## Instructions

A. In responding to each of the following requests, furnish all documents within your possession, custody or control or the possession, custody or control of your attorneys or other persons acting on your behalf. If you are acting in some representative capacity on behalf of others, or on behalf of a corporation or other division or unit thereof, furnish all information available to that entity.

B. For any requested documents as to which any claim of privilege is made or as to which any claim of protection from discovery is made, identify the privilege or Rule of Civil Procedure upon which you rely; identify the document in question by date, author(s), recipient(s), present custodian(s) and general subject matter(s); and set forth the facts upon which such claim of privilege or protection is based in sufficient detail to enable a judgment to be formed as to the basis and validity of the claim.

Unless otherwise stated, the time frame of January 1, 2004 to the present shall be the relevant time period for documents requested herein.

## Requests

1. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2007 up to and including the present.

2. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2004-December 31, 2004.

3. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2005-December 31, 2005.

4. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev USA for the period January 1, 2006-December 31, 2006.

5. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2007 up to and including the present.

6. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2004-December 31, 2004.

7. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2005-December 31, 2005.

8. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev Europe for the period January 1, 2006-December 31, 2006.

9. The articles of organization of InBev USA and any amendments thereto.

10. The by-laws of InBev USA and any amendments thereto.

11. All documents reflecting a decision made by InBev Europe regarding the financial or business activities of InBev USA.

12. All documents reflecting the identity and job responsibilities of officers or other executives of InBev USA responsible for making business decisions.

13. All documents reflecting the identity and job responsibilities of officers or other executives of InBev Europe responsible for making business decisions regarding InBev USA.

14. All documents reflecting the identity of officers or other executives of InBev Europe responsible for making business or financial decisions regarding InBev USA.

15. All documents reflecting any and all corporate requirement(s), policy(s), directive(s) or other communication(s) by you or by InBev Europe to the effect that a decision, financial or otherwise, must be submitted for review and/or approval to InBev Europe.

16. All documents reflecting limits on the authority of InBev USA to act without the consent, approval or direction of InBev Europe.

17. All documents reflecting control by InBev Europe over the financial or business activities of InBev USA.

18. All documents reflecting the involvement of InBev Europe regarding employees of InBev USA, including, without limitation, (a) the impact on InBev USA employees of the A-B transaction; (b) the offer made to employees of InBev USA to work for A-B as a result of the Transaction (b) compensation including bonus compensation or severance payments to InBev USA employees as a result of the A-B Transaction; and (d) any decision regarding compensation to be paid to InBev USA employees from January 1, 2004 to the present.

19. All documents reflecting efforts by InBev Europe to recruit, advertise for or otherwise identify potential employees for InBev USA.

20. A copy of InBev USA's employee manual, and any amendments and/or changes thereto.

21. All documents prepared by InBev Europe reflecting the pricing to be charged by InBev USA to wholesalers such as plaintiffs.

22. All documents reflecting communications between InBev USA and InBev Europe regarding any of the plaintiffs.

23. All documents reflecting communications between InBev USA and InBev Europe regarding any of the defendants.

24. All documents reflecting communications between InBev USA and InBev Europe regarding InBev International, Inc..

25. All documents reflecting communications between any of the defendants and any of the plaintiffs regarding distribution of InBev Europe's brands in Rhode Island.

26. All documents reflecting communications between any of the defendants regarding distribution of InBev Europe's brands in Rhode Island.

27. All documents reflecting the contractual relationship between InBev USA and any of the plaintiffs.

28. All documents reflecting the contractual relationship between InBev USA and any of the defendants.

29. All documents reflecting the contractual relationship between InBev USA and Labatt USA.

30. All documents reflecting the name change from Labatt USA to InBev USA and back to Labatt USA.

31. All documents reflecting the relationship between InBev USA and Labatt USA.

32. All documents reflecting the relationship between InBev USA and InBev International, Inc..

33. All documents reflecting the relationship between InBev Europe and InBev International, Inc..

34. All documents reflecting the role or responsibility of InBev International, Inc. for overseeing the A-B relationship.

35. All documents reflecting the corporate organizational chart, and any amendments thereto, of InBev International, Inc..

36. The articles of organization on InBev International, Inc..

37. A listing of the names and addresses of each and every person employed at InBev International, Inc. for the time period January 1, 2007 up to and including the present.

38. All documents reflecting direction, recommendations or suggestions by InBev Europe regarding the business, financial or corporate affairs of InBev USA.

39. All documents reflecting the names of the members of the Board of Directors of InBev Europe, Inbev USA, and InBev International, Inc..

40. All documents reflecting InBev Europe's involvement in the decision announced in November or December, 2005 to make changes in the management at InBev USA.

41. All documents reflecting the names of the officers of InBev Europe, InBev USA, and InBev International, Inc., and any changes or amendments thereto, from January 1, 2004 up to and including the present.

42. All documents reflecting the identity of any and all owner(s) of the stock of InBev USA from its inception up to and including the present.

43. All documents reflecting any common directors and/or officers of InBev Europe and InBev USA, at any time from January 1, 2004 up to and including the present.

44. All documents reflecting any monies paid by InBevEurope to or for the benefit of InBev USA, including without limitation, payment of salaries, expenses and/or loans of InBev USA.

45. All documents reflecting any loans or other financial transactions pursuant to which InBev Europe paid or advanced monies to or on behalf of InBev USA or guaranteed debt of InBev USA.

46. All documents reflecting the logo used by InBev Europe to conduct business.

47. Copy of the corporate letterhead for InBev Europe.

48. All documents reflecting the logo used by InBev USA to conduct business.

49. Copy of the corporate letterhead of InBev USA.

50. All documents reflecting the logo used by InBev International, Inc. to conduct business.

51. Copy of the corporate letterhead of InBev International, Inc..

52. All documents reflecting the "global organizational structure" referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article

entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

53. All documents reflecting the unified "compensation and human development processes … around the world" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

54. All documents reflecting the unified "system of cost management worldwide" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

55. All documents reflecting the "intertwining of core managerial and day-to-day business functions" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf).

56. All documents reflecting the manner in which InBev USA and InBev Europe have core business functions that are "inseparable" and the manner in which InBev Europe and InBev USA have intermingled their assets "on a global level" as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

57. All document reflecting that InBev USA's president and CEO reports to the InBev North American zone presidentas referred to by Simon Thorpe, former president

and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

58. All document reflecting that the InBev North American zone president reports directly to the InBev Europe CEO as referred to by Simon Thorpe, former president and CEO of InBev USA in the 2005 magazine article entitled, Modern Brewery Age, *The Evolution of InBev USA*, (http://www.breweryage.com/pdfs/2005-interview%20s.thorpe%207-05.pdf)

59. All documents prepared by InBev USA regarding the need to obtain the consent or approval of Inbev Europe for any business or financial decision of InBev USA.

60. All documents reflecting persons or entities who have the right to appoint members of InBev USA's Board of Directors and how and when those directors are appointed.

61. All documents reflecting participation or involvement of any kind by InBev Europe in InBev USA's budgets, budget approvals and advertising and marketing strategy.

62. All documents regarding the Beer Industry Fair Dealing Law (the "Act"), Rhode Island General Laws §§ 3-13-1 through 3-13-12.

63. Financial statements of InBev USA for 2005 and 2006, including, without limitation, financial statements, summaries or other information prepared for inclusion in a consolidated financial statement or report of InBev Europe.

64. All documents reflecting the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

65. All documents reflecting the termination or expiration of the agreement between InBev Europe and InBev USA pursuant to which InBev USA imported and/or distributed InBev Europe's beer brands into the United States.

66. Any and all documents evidencing an agreement between Labatt USA and Beck's North America to form InBev USA.

67. All contracts and/or agreements entered into between InBev Europe, InBev USA, and/or A-B with regard to the right to import and distribute InBev Europe products in the United States.

68. Copy of the "Import Agreement", dated on or about November 30, 2006 entered into between A-B and InBev Europe.

69. A detailed listing, including names and addresses, for each person involved in making the decision to terminate InBev USA's United States imports of InBev Europe brands.

70. A detailed listing, including names and addresses, for each person involved in making the decision to enter to an Import Agreement with A-B for the United States imports of InBev Europe brands.

71. A listing of the names and addresses of each person at A-B that InBev International, Inc., InBev Europe, and/or InBev USA has spoken with and/or communicated with from January 1, 2006, up to and including the present.

72. All documents that were given to A-B by InBev Europe prior to entering into the Import Agreement dated November 30, 2006.

73. All documents that were given to A-B by InBev USA prior to entering into the Import Agreement dated November 30, 2006.

74. All documents that were given to A-B by InBev Europe from December 1, 2006 up to and including the present.

75. All documents that were given to A-B by InBev USA from December 1, 2006 up to and including the present.

76. All documents that were given to A-B by InBev International, Inc. from December 1, 2006 up to and including the present.

77. Any and all budget documents for InBev Europe showing/reflecting InBev USA's income or expenses for the time period January 1, 2004 up to and including the present.

78. All documents reflecting any/all consideration paid/tendered by A-B to InBev USA and/or InBev Europe to acquire distribution rights to InBev Europe's products.

79. All documents and/or correspondence between InBev Europe and InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

80. All contracts and/or agreements between InBev Europe and InBev USA that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

81. All documents and/or correspondence between InBev Europe, InBev USA, and A-B that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

82. All contracts and/or agreements between InBev Europe, InBev USA, and A-B that in any way relate to or reference discussions regarding InBev USA no longer importing InBev Europe products in the United States.

83. All documents regarding the A-B Transaction, including without limitation, the following:

a. All documents regarding InBev USA employees leaving InBev USA and being hired by A-B, including, without limitation, communications by InBev USA to employees regarding their employment by A-B following the Transaction;

b. All documents regarding InBev USA employees leaving InBev USA and being hired by InBev Europe or another subsidiary of In Bev Europe;

c. All documents reflecting any newly created positions or divisions of InBev Europe that will deal with, oversee or work with A-B with respect to the InBev Europe brands; and the names of all persons who are or will be assigned to or employed by such division or hold such positions to the extent that such person was at any time in the past an employee of InBev USA.

d. All documents reflecting the formation of and functions of "InBev International, Inc.," a division of InBev Europe or one of its subsidiaries.

e. All documents reflecting communications between InBev USA and Moran regarding distribution of InBev brands in Rhode Island.

f. All documents reflecting communications between InBev USA and A-B regarding distribution of InBev brands in Rhode Island.

g. All documents regarding the decision that plaintiffs would cease distributing InBev brands as a result of the Transaction.

84. All documents reflecting, referring or relating to communications of any kind between InBev USA and InBev Europe concerning the Transaction.

85. Any and all 2007 business plans of Rhode Island distributors that were submitted to InBev USA and/or InBev Europe.

86. All documents reflecting, the identity and job responsibilities of any person employed by InBev USA who later became an employee of InBev Europe and the job responsibility of such person both at InBev USA and InBev Europe.

87. All documents reflecting, referring or relating to communications of any kind between InBev USA and A-B concerning the Transaction.

88. All documents reflecting, referring or relating to communications of any kind between A-B and InBev Europe concerning the Transaction.

89. All documents reflecting, referring, or relating to communications of any kind concerning the Transaction.

90. All documents reflecting referring or relating to communications of any kind between InBev USA and Moran concerning distribution of InBev Europe's brands in Rhode Island.

91. All agenda, minutes or notes (whether in draft of final form) from any and all meetings of the shareholders of InBev USA from January 1, 2004 to the present.

92. All agenda, minutes or notes (whether in draft of final form) from any and all meetings of the shareholders of InBev Europe from January 1, 2004 to the present mentioning InBev USA or any of its employees, officers or directors for any purpose whatsoever.

93. All documents reflecting any payment or consideration from InBev Europe to InBev USA resulting from the Transaction.

94. All documents reflecting any payment or consideration from A-B to InBev USA resulting from the Transaction, including, without limitation, payment or consideration relating to InBev USA's former employees who are now employed by A-B as a result of the Transaction.

95. Any and all Secretary of State filings for InBev USA and/or InBev Europe for the time period January 1, 2004 up to and including the present.

Respectfully submitted,

COPLEY DISTRIBUTORS, INC.,
CHARLES FRADIN, INC., and
C&C DISTRIBUTORS, INC.

By their Attorneys,

SHECHTMAN HALPERIN SAVAGE, LLP

Preston W. Halperin, RI Bar No. 5555
Douglas A. Giron, RI Bar No. 2943
1080 Main Street
Pawtucket, RI 02860
(401) 272-1400
(401) 272-1403 (facsimile)

GOLDMAN LAW OFFICES

Brian A. Goldman, RI Bar No. 3940
681 Smith Street
Providence, RI 02908
(401) 521-4100
(401) 274-5433 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this __h day of February 2007, I have caused a true and accurate copy of the within Memorandum in Opposition to Motion to Dismiss, to be served via electronic transmission as well as first class mail, postage prepaid, upon the following counsel of record:

(for Anheuser-Busch, Inc.)
Joseph V. Cavanagh, Jr., Esquire
Kristin Rodgers, Esquire
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, RI 02903-1765
jvc@blishcavlaw.com
ker@blishcavlaw.com

(for InBev USA, LLC)
Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906-4314
jschreck@msn.com
and
Angel Taveras, Esquire
127 Dorrance St.
Providence, RI 02903
ataveras@ctpllp.com

(for McLaughlin & Moran, Inc.)
R. Kelly Sheridan, Esquire
Roberts, Carroll, Feldstein & Peirce, Inc.
10 Weybosset Street
8th Floor
Providence, RI 02903
ksheridan@rcfp.com